[Civ. No. 29616. First Dist., Div. One. Aug. 16, 1972.]

BURKE CONCRETE ACCESSORIES, INC., Plaintiff and Appellant, v. WHITELEY TOLSON et al., Defendants and Respondents.

## COUNSEL

Bancroft, Avery & McAlister, Luther J. Avery, Edmond G. Thiede and Sandra J. Shapiro for Plaintiff and Appellant.

Bronson, Bronson & McKinnon and Paul H. Cyril for Defendants and Respondents.

## OPINION

**ELKINGTON, J.**—The appeal by plaintiff Burke Concrete Accessories, Inc. (hereafter Burke) is taken from a summary judgment construing certain language of an insurance policy.

The parties stipulated to the facts upon which the judgment was based. They may briefly be stated as follows.

In building construction metal "snap ties" are sometimes used to maintain proper distances between the inner sides of concrete forms during the pouring of concrete. When the concrete has set and the forms are being

removed the ends of the snap ties are twisted and snapped off, leaving their center portions within the concrete. At each end there remains a conical hole in the concrete. Burke manufactured, sold and supplied precast cork-shaped "snap plugs" which, with application of an adhesive substance, were designed to fill up the holes and provide a smooth outer surface.

On two construction projects Burke furnished defective snap plugs which deteriorated, causing damage to the structures. It was "necessary to remove them by drilling and hammering them out of the concrete walls." This enlarged and completely altered the shape of the original conical holes of the concrete; snap plugs could no longer be used. To comply with the construction contracts' specifications, it became necessary to fill the holes with a cement mixture and to resurface the walls. Burke was legally liable to the building contractors for the cost of this work in the amount of $23,822.82.

Burke held an insurance policy on which defendants were liable as the insurer. The policy contained a provision which insured Burke against losses it might "sustain or incur by reason or in consequence of:

"Any and all liability imposed by law against the Assured for loss of or *damage to* or destruction of *property of others* (including but not limited to, . . . all other indirect and consequential *damage . . . to* or destruction of *property of others*) . . . arising from any cause whatsoever out of the . . . activities, work and/or business of the Assured . . . ." (Italics added.)

The policy also contained the following provision:

"Exclusions. This Certificate Does Not Cover Liability: . . . . (D) For claims made against the Assured:

"For repairing or replacing any defective product, or products manufactured, sold or supplied by the Assured or any defective part or parts thereof nor for the cost of such repair or replacement, or . . . ."

Burke made claim under the policy for $23,822.82, the amount of its liability to the building contractors. Defendants paid the sum of $8,501.21 representing the cost of filling the holes left by the removal of the snap plugs and the cost of refinishing the walls. They refused to pay the remaining $15,321.61, the "cost of drilling and hammering into the walls and removing the defective snap plugs."

The narrowed single contention of defendants is that the drilling and

hammering of the walls in removing the defective snap plugs was a "replacing" of Burke's defective products.[1]

■ In our resolution of this problem we are bound by the rules of construction reiterated in *Continental Cas. Co.* v. *Phoenix Constr. Co.*, 46 Cal.2d 423, 437-438 [296 P.2d 801, 57 A.L.R.2d 914], as follows:

"It is elementary in insurance law that any ambiguity or uncertainty in an insurance policy is to be resolved against the insurer. . . . ■ If semantically permissible, the contract will be given such construction as will fairly achieve its object of securing indemnity to the insured for the losses to which the insurance relates. . . . ■ If the insurer uses language which is uncertain any reasonable doubt will be resolved against it; if the doubt relates to the extent or fact of coverage, whether as to peril insured against . . . the amount of liability . . . or the person or persons protected . . . , the language will be understood in its most inclusive sense, for the benefit of the insured."

■ It has repeatedly been emphasized that: "The rule is that the exclusions and exceptions are construed strictly against the insurer and liberally in favor of the insured . . . ." (*Cannizzo* v. *Guarantee Ins. Co.*, 245 Cal.App.2d 70, 73 [53 Cal.Rptr. 657]; see also *Brinkmann* v. *Liberty Mutual etc. Ins. Co.*, 63 Cal.2d 41, 45 [45 Cal.Rptr. 8, 403 P.2d 136]; *Ohio Cas. Ins. Co.* v. *Armendariz*, 224 Cal.App.2d 56, 65 [36 Cal.Rptr. 274]; *Hendricks* v. *Meritplan Ins. Co.*, 205 Cal.App.2d 133, 138 [22 Cal.Rptr. 682].)

■ And absent "circumstances indicating a contrary intention, words in an insurance policy are to be used in their plain, ordinary and popular sense. . . ." (Civ. Code, § 1644; *Jarrett* v. *Allstate Ins. Co.*, 209 Cal.App. 2d 804, 811 [26 Cal.Rptr. 231].)

As indicated, defendants concede that the snap plugs were not *"repaired"*; they expressly place no reliance upon that language of the exclusion clause. They further concede that filling up the jagged holes left in the concrete with a cement mixture was not a *"replacement"* of Burke's defective product, for they have admitted liability for that part of the work operation.

■ We proceed to our resolution of the issue presented to us.

---

[1]Parenthetically, the contention seems to make a precarious distinction. The premise is that the removal of the defective snap plugs in some way amounted to their replacement, but that the filling of the holes from which they were removed, did not. It would seem that opposite theories might be the more plausible, or at least that *both or neither* of such work operations would more likely amount to such a replacement.

I. We observe that the policy's exclusion clause purports to exclude liability for the cost of repairing or replacing Burke's *"defective product,"* i.e., the snap plugs. It cannot reasonably be construed as vitiating the insurer's liability for the cost of repairing the *damaged walls*, which was the very sort of risk for which the policy was written and its premium was paid.

II. Giving the critical words of Burke's insurance policy their "plain, ordinary, and popular sense," we conclude that removal of the defective snap plugs by drilling and hammering, did not constitute the "replacement" of those snap plugs.

■ Although in some contexts the terms "replacing" and "replacement" may cover substitution of an entirely different product or thing, another reasonable and accepted meaning is to restore the items in question (*here the snap plugs*) to "substantially the same condition" they were in before the damage occurred. (See *Northwestern National Insurance Company* v. *Cope* (Tex.Civ.App.) 448 S.W.2d 717, 719; *Grubbs* v. *Foremost Insurance Co.*, 82 S.D. 98 [141 N.W.2d 777, 778]; *Campbell* v. *Calvert Fire Insurance Company*, 234 S.C. 583 [109 S.E.2d 572, 576]; *American Standard County Mut. Ins. Co.* v. *Barbee* (Tex.Civ.App.) 262 S.W.2d 122, 123; *Dunmire Motor Co.* v. *Oregon Mut. Fire Ins. Co.*, 166 Ore. 690 [114 P.2d 1005, 1009]; *Illinois Cent. R. Co.* v. *Franklin County*, 387 Ill. 301 [56 N.E.2d 775, 779]; and see Webster's New Internat. Dict. (2d ed.).) And we note that the court in *Indemnity Ins. Co. of North America* v. *Gardner*, 214 Ala. 528 [108 So. 342], also considering the word "replacement" of an insurance policy, stated: " 'Replace' or 'replacement' *does not ordinarily mean the right to exchange or substitute,* but, when used in connection with the policy involved, means repair or restore." (Italics added.)

■ It may reasonably be said that hammering and drilling out the defective snap plugs and filling up the enlarged holes of the damaged concrete walls with cement, was *not a replacement* of the snap plugs. Since this is so, we are bound under the authority we have referred to *ante,* to so construe the exclusion clause of defendants' insurance policy.

III. The policy insured Burke against liability for all direct, "and all other indirect and consequential damage to . . . property of others" in the

course of its business. Our interpretation of the exclusion clause gives effect to the previously mentioned mandate of *Continental Cas. Co. v. Phoenix Constr. Co., supra,* 46 Cal.2d 423, 437, that: "If semantically permissible, the contract will be given such construction as will fairly achieve its object of securing indemnity to the insured for the losses to which the insurance relates."

IV. *Hauenstein* v. *Saint Paul-Mercury Indem. Co.,* 242 Minn. 354 [65 N.W.2d 122], is a closely analogous case. Plaintiffs sold plaster which, upon application, shrank and cracked requiring its removal and the replastering of walls and ceilings. The insurance company agreed to pay "any loss by reason of the liability imposed by law or contract upon the Insured for damages because of injury to or destruction of property, . . ." (P. 124.) Excluded from coverage was: " . . . injury to or destruction of . . . any goods or products manufactured, sold, handled or distributed by the Insured . . . ." (P. 124.) The court held that the exclusion clause was not applicable to the *damage* caused by the defective plaster to the building on which it was used. It was said (p. 125): "It is undisputed that after this new type of plaster had been applied it shrunk and cracked to such an extent that it was of no value and had to be removed so that the walls and ceilings could be replastered with a different material. No one can reasonably contend that the application of a useless plaster, which has to be removed before the walls can be properly replastered, does not lower the market value of a building. Although the injury to the walls and ceilings can be rectified by removal of the defective plaster, nevertheless, the presence of the defective plaster on the walls and ceilings reduced the value of the building and constituted property damage."

*Geddes & Smith, Inc.* v. *St. Paul Mercury Indemnity Co.,* 51 Cal.2d 558 [334 P.2d 881], concerned insurance policy provisions similar to those of *Hauenstein, supra.* Defective doors, millwork and hardware had been installed causing damage to certain buildings. The court relying largely on *Hauenstein, supra,* held that although the cost of replacing the defective items was not covered, the exclusion clause did not prevent recovery of the cost of their removal. It was stated: "In the present case, . . . it was necessary to remove the defective doors before they could be replaced, and we see no reason for not following the *Hauenstein* case and permitting recovery for damages to the houses according to the rule stated therein." (P. 565.)

V. Defendants rely heavily on two cases which involved the identical policy provisions with which we are here concerned. But we find these cases to be wholly consistent with the conclusions we here reach.

The first, *Eichler Homes, Inc.* v. *Underwriters at Lloyd's, London,* 238 Cal.App.2d 532 [47 Cal.Rptr. 843], concerned an insurance carrier's "obligation to defend" several actions for damages to homes and their radiant heating systems. The language of the opinion (p. 539) pointed out to us by defendants follows: "In like manner, each of the other complaints contains some allegation of damages *unrelated to the cost of repair and replacement* of the defective heating system. Thus, some claim structural damage to their houses, while others allege a decrease in the value of their homes, or claim damage to furniture, fixtures and appliances. All of these claims appear to come within the coverage extended by the insurance and hence the duty to defend is present." (The italics are those of defendants.) The case suggests that the cost of the repair or replacement of the defective products supplied by *Eichler Homes, Inc.,* i.e., the defective heating system, comes within the policy's exclusion clause; it affirms that liability for damage to the homes does not.

The second case is *Blackfield* v. *Underwriters at Lloyd's, London,* 245 Cal.App.2d 271 [53 Cal.Rptr. 838]. It also concerned the duty of an insurer to defend another action. At issue, among other things, in the other action was a claim of liability for "defective parts" furnished by an insured homebuilder. Referring to the exclusion clause the appellate court said (pp. 275-276): "It is clear, of course, that the policy excludes appellants' liability for the replacing or repairing of such defective parts. (Exclusion 1.) Respondents' brief concedes this. Their position is that the policy does not exclude liability for damages *unrelated* to the cost of such repair or replacement." We have expressed agreement with such a conclusion "that the policy excludes . . . liability for the replacing or repairing of such defective parts." And we have held that the damages here are "unrelated to the cost of such repair or replacement."

Other cases cited by defendants are based upon policy provisions wholly inapplicable here; they lend no aid to their contention.

For the reasons stated the summary judgment must be reversed.

Reversed. The superior court will enter judgment for plaintiff Burke Concrete Accessories, Inc., as prayed.

Molinari, P. J., and Kongsgaard, J.,* concurred.

A petition for a rehearing was denied September 11, 1972.

*Assigned b    e Chairman of the Judicial Council.