[Civ. No. 42617. Second Dist., Div. Five. Oct. 29, 1974.]

FARMERS INSURANCE EXCHANGE, Plaintiff and Respondent, v. ALVIN D. HARMON et al., Defendants and Appellants.

## Counsel

Williams & Williams, James J. Williams, Ned Good, Stell & Levine, Ian Herzog and Arthur S. Levine for Defendants and Appellants.

Early, Maslach, Boyd & Leavey and Thomas A. Hoffman for Plaintiff and Respondent.

## OPINION

**HASTINGS, J.**—Declaratory relief to interpret an automobile insurance policy. Defendants and appellants Harmon and Zamacona appeal from a judgment in favor of plaintiff Farmers Insurance Exchange (Farmers).

## FACTS

The facts are undisputed. Defendants Alvin and Doris Harmon (Harmons) are insured by plaintiff Farmers. Doris Harmon (Harmon, or where appropriate, insured) was driving a non-owned vehicle in or near Tepic, Mexico, which is approximately 800 miles south of the American border. An accident occurred and Armando Zamacona was seriously injured. Eleason Zamacona, owner of the automobile driven by Harmon, had no insurance coverage. Zamacona brought suit in the Los Angeles Superior Court against the Harmons, alleging negligence. Farmers provided the insured with a defense, but reserved its right to dispute coverage. It contends that the Harmons were not covered while driving in Mexico more than 75 miles from the border.

The policy, as relevant, provides as follows:

First, the company will "pay all damages which the insured becomes legally obliged to pay . . . arising out of the ownership, maintenance or use of the described automobile or a non-owned automobile and to defend . . . any suit against the insured. . . ."

Second, various terms are defined. "(1) AUTOMOBILE means a four wheel land motor vehicle. . . . (5) DESCRIBED AUTOMOBILE means the automobile described in this policy. . . . a newly acquired automobile and/or a substitute automobile. . . . (8) NON-OWNED AUTOMOBILE means an automobile not owned by or regularly or frequently used by the named insured. . . ."[1]

Third, there are five parts to the contract, each designated by a Roman numeral and at the end of each are paragraphs with the headings "Exclusions" under Part I, II, etc. These paragraphs contain specific provisions excluding coverage under the appropriate part.

---

[1]Also, "(7) NEWLY ACQUIRED AUTOMOBILE means an automobile, ownership of which is acquired by the named insured, (a) if it replaces the described automobile . . . or (b) if it is an additional automobile and the Company insures all automobiles owned by the named insured. . . .

"(11) SUBSTITUTE AUTOMOBILE means an automobile not owned by the named insured . . . while temporarily used . . . as a substitute for the described automobile when withdrawn from normal use. . . ."

Fourth, there are 22 "CONDITIONS," at the end of the policy including a clause captioned "(20) POLICY PERIOD, TERRITORY. Except as otherwise provided herein, this policy applies only to accidents; occurrences; or losses which happen during the policy period and, under Parts I, II, III and IV while the automobile is within the United States of America, its territories or possessions, or Canada, or is being transported between ports thereof.

*"This policy also applies, except with respect to Part II, while the automobile is being used for trips into that part of the Republic of Mexico lying not more than 75 miles from the boundary line of the United States of America."* (Italics added.)

This sums up the insurance policy. In addition, the company relies on an "endorsement" sent with a covering form note, concerning Mexican insurance, which we discuss *infra*.

### ISSUE

The sole issue in this case is whether Condition 20 of the policy excludes coverage for an accident which occurs in Mexico more than 75 miles from the United States border involving a non-owned automobile.

### ARGUMENT

Appellant's principal argument proceeds as follows: The policy provides in Condition 20 that it does not cover accidents involving "the automobile" more than 75 miles into Mexico. A semantically permissible interpretation, if not the only reasonable interpretation, is that the phrase "the automobile" refers only to "the described automobile," and does not include a "non-owned automobile." Therefore, although the described automobile is not covered under the policy if the accident occurred more than 75 miles from the United States border, a non-owned vehicle is. Appellant continues his argument by contending that, if the insurance policy meant to exclude coverage for accidents occurring in Mexico involving a "non-owned" automobile as well as "the described automobile," Condition 20 could have been clearly worded to so provide.[2] We conclude that this interpretation is strained to the breaking point.

While we are required to make our own independent determination of the meaning of the language in the policy (*Bareno* v. *Employers Life*

---

[2]Appellants speculate on the reason for the difference thusly:
"The rationale or purpose of such limitation seems obvious; the insurance company did not want to have the obligation to repair in Mexico 'the described automobile' because of the possibility of the Mexican government impounding the car and/or making it difficult if not impossible to have the car returned to the United States."

*Ins. Co.,* 7 Cal.3d 875, 881 [103 Cal.Rptr. 865, 500 P.2d 889]), a summary of the trial court's findings bears repeating. They are in essence:

(1) The insurance contract is clear, certain and unambiguous as to (a) coverage as to location of the accident; (b) vehicle covered. (2) The term "automobile" as used in paragraph 20 includes "the described automobile" and "non-owned automobiles." (3) the conditions in paragraph 20 as to territorial coverage are conspicious, clear and consistent with public understanding.

The trial court obviously did not concur in appellants' strained construction, nor do we. The law cited by appellants requiring all uncertainties and ambiguities in an insurance policy to be decided against the insurer is not applicable here. The rule has application only when the policy actually presents some uncertainty or ambiguity. *(Ogburn* v. *Travelers Ins. Co.,* 207 Cal. 50, 53-54 [276 P. 1004].)

■ An insurance policy is but a contract; and, like all other contracts, it must be construed from the language used; when the terms are plain and unambiguous, it is the duty of courts to hold the parties to such contract. *(Fyne* v. *Industrial Acc. Com.,* 138 Cal.App.2d 467, 471-472 [292 P.2d 78].) The courts will not indulge in a forced construction so as to fasten a liability on the insurance company which it has not assumed. *(Pacific Employers Ins. Co.* v. *Maryland Casualty Co.,* 65 Cal.2d 318, 323 [54 Cal.Rptr. 385, 419 P.2d 641].) ■ Absent circumstances indicating a contrary intention, words in an insurance policy are to be used in their plain, ordinary and popular sense. *(Burke Concrete Accessories, Inc.* v. *Tolson,* 27 Cal.App.3d 237, 241 [103 Cal.Rptr. 513].)

■ Application of the above basic rules to the insurance contract involved supports the trial court's conclusion. The policy covered the insured on three[3] defined automobiles (other than a substitute vehicle) that could be driven by them while in the designated areas (United States, Canada, and part of Mexico). The pertinent provision of paragraph 20 states: "This policy also applies . . . while the automobile is being used for trips into that part of . . . Mexico lying not more than 75 miles from the boundary line of the United States of America."

*The Mexican coverage provision was merely an extension of the geographic limits.* Reference to *the automobile* is clearly to automobiles insured, and can apply only to one of the types defined in the policy. There is no ambiguity.[4] A rule frequently used in interpreting insurance policies

---

[3]The described automobile, a newly acquired automobile, a non-owned automobile.

[4]The dissent, in claiming there is ambiguity, maintains Farmers could have resolved the problem by specific reference to each class of automobiles or by referring to *"an*

is the reasonable expectation test. In *Gray* v. *Zurich Insurance Co.*, 65 Cal.2d 263 [54 Cal.Rptr. 104, 419 P.2d 168], the court, at page 269, indicated that in an insurance contract written by the more powerful bargainer (the insurer) to meet its own needs, and offered to the weaker party (the insured) on a "take it or leave it" basis, the reasonable expectations of the latter may have significance in determining whether the former owes coverage greater than it contends because the language would lead to such a conclusion. The language in Harmons' policy does not supply such expectation. It would be unreasonable for the insured to expect she could drive a non-owned vehicle in Mexico more than 75 miles from the United States border when she could not do so in her own automobile, particularly in light of the well known hazards of Mexican driving.[5] The rationale for the speculation stated by appellants in footnote 2, *supra*, is that "the insurance company did not want to have the obligation to repair in Mexico 'the described automobile.'" We do not subscribe to this suggestion;[6] however, it strengthens Farmers' position because the reason does not support an expectation of appellants but is founded upon a concern of Farmers. No rationale is given by appellants as to why the Harmons expected different and more inclusive coverage in a non-owned vehicle in Mexico than in an owned automobile.

There remains no possible doubt on this issue when we consider an "endorsement" to the policy. First, a covering note sent with the endorsement tells the policyholder that the "State of California requires all automobile liability policies containing a provision extending coverage in Mexico be endorsed with a 'Warning' notice of the requirements of the Mexican Law."[7] Attached to the cover note is the following:

"ENDORSEMENT

"(Please attach to your policy if it affords automobile liability insurance.)

"WARNING

"Unless you have automobile insurance written by a Mexican insurance company, you may spend many hours or days in jail, if you have an ac-

---

automobile" or "*any* automobile," and then footnotes examples. This is totally unrealistic. There can be no doubt that the automobile referred to in Paragraph 20 is the vehicle involved in the accident, and if it is more than 75 miles in Mexico below the United States border, it is not covered.

[5]If not "commonly known," insureds were clearly put on notice by the endorsement and warning from Farmers, discussed *infra*.

[6]Interestingly the dissent is not impressed by this argument but suggests the insured could expect the right to use a non-owned automobile in Mexico City or Guadalajara (cities deep in Mexico) on a temporary basis. But this contention is untenable because the policy *denies coverage 75 miles below the United States border*.

[7]Section 11580.6 of the Insurance Code.

cident in Mexico. Insurance coverage should be secured from a company licensed under the laws of Mexico to write such insurance in order to avoid complications and some other penalties possible under the laws of Mexico, including the possible impoundment of your automobile.

"This endorsement becomes part of the policy to which it is attached and supersedes and controls anything in the policy contrary hereto but is otherwise subject to the declarations, insuring agreements, exclusions and conditions thereof."

Below the endorsement is:

### "PLEASE NOTE

"Your policy does provide protection when you drive *an automobile in Mexico within 75 miles* of the boundary line of the United States. However, because of the requirements of Mexican law, the California State Legislature has asked the insurance industry to give you the above warning.

*If you plan to drive an automobile in Mexico,* please consult your Farmers Insurance Group Agent, who will be most happy to assist you in obtaining the necessary Mexican insurance." (Italics added.)

The warning speaks out loud and clear that Harmons knew the insurance covered them only when they drove *an automobile* in Mexico within 75 miles of the United States border. Clearly the endorsement merely seeks to, and does, warn the policy holder that he is only covered in a limited area in Mexico, and warns him to obtain Mexican insurance. There is little more, if anything, that Farmers could have done to help its insured.[8]

In sum, the position of the insurer is irrefutable in that no special or different connotation is being placed on the words "the" and "an" in front of "automobile." They merely reiterate that the coverage is of the various defined automobiles; i.e., "an automobile" in the endorsement is the same as "the automobile" in paragraph 20.

Appellants contend the insurance contract was one of adhesion; therefore, the exclusionary clause must be conspicuous, plain and clear, and since it was not, it therefore cannot be enforced as a matter of public policy. There is no merit to this argument. The 22 "Conditions" and para-

---

[8]The dissent, which uses 5 pages in trying to explain why the language in the policy is ambiguous, claims the endorsement compounds the ambiguities of Condition 20. Of course we do not agree. There are no ambiguities to compound; and assuming, arguendo, the insured is in doubt about Mexican coverage, the endorsement and warning clarify the coverage instead of confusing it.

graph 20 were conspicuous, and set forth with capitalized headings and standard printing. We have explained why we believe the language was plain and clear earlier in this opinion.

The judgment is affirmed.

Ashby, J., concurred.

**KAUS, P. J.**—I respectfully dissent.

The majority holds that it would be a "forced" and "strained" construction of the policy to interpret a territorial limitation for "the automobile" to refer only to the automobile described in the policy. I disagree: nothing is more natural. The long and short of this case is that Farmers wants us to hold that "the automobile" really means "whatever automobile the insured is using at the time of the accident." If that is what Farmers meant to say, it should have given the job of saying it to a nine-year-old child, who surely would have done a better job than the draftsman of the policy under consideration. To say that "the automobile" is "clearly, certainly and unambiguously" not the car for which the Harmons bought insurance, but also one which Mrs. Harmon happened to be driving during a visit to Mexico, flies in the face of insured's reasonable expectations, violates accepted principles of construction of insurance contracts and ignores many indicia to the contrary in the policy itself.

First, however, there is a red herring that must be exposed. There is a suggestion in the majority opinion that the policy as a whole has some kind of territorial limitation to the United States and Canada and that coverage in Mexico is furnished, if at all, by that part of Condition 20 which affords coverage "while the automobile is being used for trips into that part of the Republic of Mexico lying not more than 75 miles from the boundary line of the United States of America"—a clause which the majority calls an "extension of the geographic limits."

Reference to the 75-mile extension into Mexico for "the automobile" is quite irrelevant unless one can first point to something in the policy which denies coverage anywhere in Mexico with respect to the car Mrs. Harmon was driving at the time of the accident. If "the automobile" refers to non-owned automobiles as well as to the described automobile, then there is no coverage in Mexico, and, of course, there is no way of moving Tepic to within 75 miles of the United States border. The issue, however, is not the effect of the 75-mile extension. It is, rather, whether the basic territorial limitation for "the automobile" refers to the automobile for which the Harmons purchased insurance, or to any non-owned automobile either one might be using at the time of an accident. It is, therefore,

not the Harmons who must somehow stretch a 75-mile extension all the way to Tepic; it is Farmers who must point to an applicable territorial limitation in the policy.

The fact is that the policy has no territorial limitation other than Condition 20 itself. Therefore, unless the clause which affords insurance only "while the automobile is within the United States of America . . . or Canada . . ." denies coverage as far as the subject accident is concerned, the insured is protected without any reference to the 75-mile "extension."

For the sake of clarity I shall quote Condition 20 in full, italicizing language which is significant in the present context:

"(20) POLICY PERIOD, TERRITORY

"Except as otherwise provided herein, this policy applies only to accidents; occurrences; or losses which happen during the policy period and, *under Parts I, II, III and IV* while the automobile is within the United States of America, its territories or possessions, or Canada, or is being transported between ports thereof.

"This policy also applies, except with respect to Part II, while the automobile is being used for trips into that part of the Republic of Mexico lying not more than 75 miles from the boundary line of the United States of America." (Italics added.)

The majority suggests that Mrs. Harmon could not reasonably expect coverage while driving a non-owned automobile in Mexico more than 75 miles south of the border. Why not? Condition 20 of the policy only applies to parts I through IV. Part V provides "Comprehensive Personal Liability Insurance" for non-vehicular torts without any territorial restriction whatever! If the policy, under Part V, protects the insured from the legal consequences of a carelessly thrown dart in a London pub, what is so unreasonable about her expecting protection in Mexico under Part I unless such coverage is clearly excepted?

The majority therefore paints an entirely false picture of Mrs. Harmon, hat in hand, asking the courts to help here in extending coverage beyond the policy's basic territorial limits. There are no such limits except to the extent that they may be found in Condition 20. In truth, it is Farmers which is trying to carve out a Mexican sanctuary with respect to the use of non-owned cars. It attempts to do so by relying on language which

violates every applicable precept: it is neither conspicuous,[1] nor plain, and, certainly, far from clear. The effort must therefore fail. (*State Farm Mut. Auto. Ins. Co.* v. *Jacober,* 10 Cal.3d 193, 201-202 [110 Cal.Rptr. 1, 514 P.2d 953]; *Steven* v. *Fidelity & Casualty Co.,* 58 Cal.2d 862, 878 [27 Cal.Rptr. 172, 377 P.2d 284].)

Actually, it is quite unnecessary to resort to any special rule of interpretation relating to exceptions to coverage. More basic is the principle that all doubts must be resolved against the insurer and all uncertainties and ambiguities construed in favor of coverage. (*Gyler* v. *Mission Ins. Co.,* 10 Cal.3d 216, 219 [110 Cal.Rptr. 139, 514 P.2d 1219].)

Even if we had no other aids to interpretation at our disposal, it seems to me self-evident that the question whether "the automobile" means "the described automobile" or "the described automobile or any non-owned automobile the insured happens to be using at the time of the accident" is at least ambiguous and that, therefore, the benefit of the doubt must go to the insured. Apart from that, however, the policy contains irrefutable proof that when Farmers wants to apply a clause granting, conditioning, or excluding coverage to any automobile, described or non-owned, it knows very well how to do so, either by specific reference to each class of automobile or by referring to "*an* automobile" or "*any* automobile." Examples are noted below.[2] Thus, in examples A, C, and G, the policy

---

[1]That Condition 20 is not conspicuous in the accepted sense of the word is beyond argument. It appears in the usual small print on the last of five legal size, double-columned pages. It is tucked away half way down the right-hand column.

[2]The list is by no means exhaustive. (The italics are mine.)

A. The policy excludes from coverage under Part I "bodily injury to any fellow employee of the insured injured in the course of his employment if such injury arises out of the use of *an automobile* in the business of his employer, . . ."

B. Also under Part I, the policy excludes "liability assumed by the insured under any contract or agreement except liability of others assumed under a written contract relating to the use of a *non-owned* or a substitute automobile."

C. Still under Part I, the policy does not apply "to *any automobile* while used as a public or livery conveyance, but this exclusion does not apply to the named insured or his relatives if occupying but not operating *a non-owned automobile.*"

D. Nor does Part I apply "while *the described automobile* is being used in the automobile business . . ."

E. The exclusions under Part I further provide that the policy does *not apply to "any non-owned automobile [sic]* arising out of its use (a) in the automobile business by the insured, or (b) in any other business or occupation of the insured except *a private passenger automobile* operated or occupied by the named insured or a servant."

F. Part III—Medical Expense Insurance—protects the named insured and relatives "while occupying *the described automobile . . .* or *a non-owned automobile . . . .*"

G. Under Part III, the policy does not apply to "any person while occupying *any automobile* while used as a public or livery conveyance, but this exclusion does not

talks of "*an*" or "*any*" automobile. More to the point, perhaps, in examples F, I and K, the policy speaks clearly and unambiguously of "*the described automobile or a non-owned automobile.*" If Farmers intended Condition 20 to apply to all such automobiles, why was it suddenly at a loss for words and spoke cryptically of "the automobile"? The probable answer is that Farmers' underwriters never intended the interpretation which the attorneys retained by its claims department are asserting.

There are, indeed, very logical reasons why Farmers should extend coverage to its insureds for the use of non-owned automobiles outside of the United States. Farmers might have been reluctant to underwrite the risks involved in driving the described automobile far into Mexico and its use there, possibly on a continuing basis. On the other hand, the use of a non-owned automobile outside of the United States and Canada is actuarially far more likely to be of short duration—such as to meet the temporary needs of the traveler who arrives in Guadalajara or Mexico City by airplane—purely local and, most importantly, divorced from the risks involved in driving the described automobile to a distant city.[3]

The "endorsement" relied upon by Farmers only strengthens the insured's position. First, a cover note sent with the endorsement tells the policy holder that the "State of California requires all automobile liability policies *containing a provision extending coverage in Mexico* be endorsed with a 'Warning' notice of the requirements of the Mexican Law." (Italics added.)

Below the cover note we find the following:

---

apply to the named insured or a relative if occupying but not operating a *non-owned automobile.*"

H. Nor does Part III apply in certain cases to bodily injury sustained by "any person resulting from the use of a *non-owned automobile. . . .*"

I. Part IV extends comprehensive and collision coverage "*to the described automobile* or *a non-owned automobile* used by the insured."

J. Part IV also provides that the deductible feature of the coverage does not apply "with respect to a collision involving *the described automobile* and another automobile insured by the Company."

K. Farmers' promise to pay for towing charges under Part IV applies expressly to "*the described automobile* or *a non-owned automobile.*"

L. The policy expressly provides that with respect to *non-owned automobiles* certain coverages shall be excess over any other collectible insurance available to the insured.

[3]With deference to the views of appellant's counsel, this seems a far more cogent reason for the differentiation between the described and non-owned automobiles than the one quoted in footnote 2 of the majority opinion. The trouble with that rationale is that it fails to take into account that Part IV of the policy, which provides for collision coverage, applies expressly to loss "to the described automobile, or a non-owned automobile used by the insured." The supposed reluctance of Farmers to pay for repairs in Mexico cannot be assumed to evaporate when it becomes obligated to pay for the cost of repairing non-owned cars.

"ENDORSEMENT

(Please attach to your policy if it affords automobile liability insurance)

"WARNING

"Unless you have automobile insurance written by a Mexican insurance company, you may spend many hours or days in jail, if you have an accident in Mexico. Insurance coverage should be secured from a company licensed under the laws of Mexico to write such insurance in order to avoid complications and some other penalties possible under the laws of Mexico, including the possible impoundment of your automobile.[4]

"This endorsement becomes part of the policy to which it is attached and supersedes and controls anything in the policy contrary hereto but is otherwise subject to the declarations, insuring agreements, exclusions and conditions thereof."

This endorsement, at best, compounds the ambiguities of Condition 20. Assuming that the insured has any doubt about having coverage in Mexico, the cover note tells him that he is receiving the endorsement precisely because his policy provides for such coverage. The endorsement itself tells him about certain unpleasant consequences if he has an accident in Mexico and is not insured with a company licensed under the laws of Mexico; however, it contains no hint that the financial obligations of Farmers under its policy are in any way affected by his failure to secure such additional coverage. What the Mexican authorities might or might not have done to Mrs. Harmon is not the question here. What we are concerned with is whether Farmers is going to honor its promises in a California state court. I think that it should.[5]

Appellants' petition for a hearing by the Supreme Court was denied December 26, 1974. Tobriner, J., was of the opinion that the petition should be granted.

---

[4] The endorsement required by section 11580.6 of the Insurance Code ends here.

[5] The endorsement proper is followed by a sales pitch informing the insured that Farmers' agents would be "happy" to assist him in obtaining coverage which would satisfy the Mexican authorities; further, it tells him that the policy provides protection when he drives "an"—rather than "the"— automobile in Mexico within 75 miles of the border.

It is obvious that nothing in this commercial message can detract from such coverage as the policy affords. If, however, the apparently inadvertent shift from "the" to "an" has any legal significance, it, too, is subject to interpretation in the assured's favor. Since the 75-mile extension in the policy only speaks of "the" automobile, coverage for the use of automobiles other than the described automobile must derive from some other source. That source, of course, is the basic insuring agreement for non-owned automobiles and the absence of any provision denying Mexican coverage for such cars.