112 Cal.App.3d 213 (1980)
169 Cal. Rptr. 278
DOUGLAS R. GIDDINGS et al., Plaintiffs and Appellants,
v.
INDUSTRIAL INDEMNITY COMPANY et al., Defendants and Respondents.
Docket No. 22179.
Court of Appeals of California, Fourth District, Division One.
November 17, 1980.
*215 COUNSEL
Hillyer & Irwin, Norman R. Allenby and Mitchel J. Olson for Plaintiffs and Appellants.
Wingert, Grebing, Anello & Chapin, Michael M. Anello, Thelen, Marrin, Johnson & Bridges, Edward J. Ruff, Philip R. Placier, James T. Hendrick and Theresa W. Ryan for Defendants and Respondents.
OPINION
BROWN (Gerald), P.J.
Douglas Giddings and Edwin Giddings appeal the judgment dismissing their suit against Industrial Indemnity Company and Mission Insurance Company, after the trial court granted the *216 companies' motions for summary judgment. The issue involves "property damage" under liability insurance policies.
The Giddings were business associates of C. Arnholt Smith. Douglas Giddings was an officer, director and employee of Westgate California Corporation (Westgate) and a director of United States National Bank (USNB). Edwin Giddings was a director of USNB. After the collapse of Smith's financial empire, the Giddings were named as defendants in three federal actions. In Harmsen v. Smith, a class action, the minority shareholders of USNB sought to recover for the total loss of the value of their holdings, alleging violations of federal banking law and federal and California securities laws, breach of fiduciary duty by USNB's directors and controlling shareholders, fraud, and conspiracy. In Franklin National Bank v. United States National Bank, Franklin National Bank sought recovery of $5 million it had paid for capital notes of USNB, alleging violations of federal securities laws, fraud, and conspiracy. In Trone v. Smith, the trustees for Westgate and related entities in reorganization under the Federal Bankruptcy Act sued on behalf of Westgate and its subsidiaries. The trustees alleged the numerous defendants had engaged in a systematic looting of Westgate, defrauded the corporation and its shareholders and creditors, and appropriated the assets, credit, and corporate opportunities of Westgate for their own gain. The complaint alleged 10 wrongful "courses of conduct" including: causing Westgate to buy assets for substantially more than their fair market value and sell assets for substantially less than their fair market value; taking and misappropriating Westgate's assets; causing Westgate to lend its assets to certain defendants without consideration; causing Westgate to lease its assets for less than their fair rental value; and causing Westgate to transfer assets and security interests without consideration and "other waste and misappropriation." By engaging in these courses of conduct, the Trone plaintiffs alleged, the defendants "wasted, misappropriated and converted the corporate assets and credit of Westgate and its subsidiaries." The complaint also alleged these courses of conduct constituted violations of federal banking and securities laws, violations of California securities laws, breaches of the defendants' duties of loyalty and due care, and fraud.
Industrial insured Westgate and USNB and their officers and directors at various times under three public liability policies. The policies included coverage for liability for "property damage." Two of the Industrial policies define "property damage" as "injury to or destruction of tangible property." The remaining Industrial policy defines "property *217 damage" as "(1) physical injury to or destruction of tangible property ..., including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period." An "occurrence" is "an accident ... which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." In the event of a claim or lawsuit against the insured, the policies require the insured to forward all relevant documents to Industrial "immediately."
Mission provided Westgate and its officers and directors with excess public liability coverage. The Mission policy covered liability for "property damage," defined as "loss of or direct damage to or destruction of tangible property." The policy requires the insured to give notice of a covered occurrence "as soon as practicable."
The Giddings appeared in the Harmsen action in January 1974 and were served in the Trone action in April 1975. In late 1976 or early 1977 they made demands on Industrial to defend or indemnify them in these two lawsuits. The Franklin action was filed in November 1973. The Giddings acknowledge they waited until late 1976 or early 1977 to demand a defense from Industrial in this action, and Industrial contends they made no tender at all. Douglas Giddings, the only plaintiff who now claims coverage under the Mission policy, did not tender the defense of the three actions to Mission until March 1977.
After Industrial and Mission declined their tenders, the Giddings brought the present action, alleging the insurers had wrongfully refused to defend them. The trial court found the federal actions did not potentially seek to recover for "property damage" covered by the Industrial and Mission policies and granted the insurers' motion for summary judgment.
(1) An insurer's duty to defend litigation brought against its insured is broader than its duty to indemnify (Gray v. Zurich Insurance Co. (1966) 65 Cal.2d 263, 276-277 [54 Cal. Rptr. 104, 419 P.2d 168]; Fresno Economy Import Used Cars, Inc. v. United States Fid. & Guar. Co. (1977) 76 Cal. App.3d 272, 278 [142 Cal. Rptr. 681]; Eichler Homes, Inc. v. Underwriters at Lloyd's, London (1965) 238 Cal. App.2d 532, 538 [47 Cal. Rptr. 843]). The insurer must furnish a defense when it learns facts creating the potential of liability under the policy (Gray v. Zurich Insurance Co., supra, 65 Cal.2d 263, 275, 277; State Farm *218 Mut. Auto. Ins. Co. v. Flynt (1971) 17 Cal. App.3d 538, 548 [95 Cal. Rptr. 296]). But the insurer's obligation is not unlimited; the duty to defend is measured by the nature and kind of risks covered by the policy (Gray v. Zurich Insurance Co., supra, 65 Cal.2d 263, 275; Dillon v. Hartford Acc. & Indem. Co. (1974) 38 Cal. App.3d 335, 339 [113 Cal. Rptr. 396]; State Farm Mut. Auto. Ins. Co. v. Flynt, supra, 17 Cal. App.3d 538, 548).
(2a) The present case is readily distinguishable from Gray and many of the cases following it, which have broadly interpreted the insurer's duty to defend. (See, e.g., Wint v. Fidelity & Casualty Co. (1973) 9 Cal.3d 257 [107 Cal. Rptr. 175, 507 P.2d 1383, 90 A.L.R.3d 1185]; Mullen v. Glens Falls Ins. Co. (1977) 73 Cal. App.3d 163 [140 Cal. Rptr. 605]; Val's Painting & Drywall, Inc. v. Allstate Ins. Co. (1975) 53 Cal. App.3d 576 [126 Cal. Rptr. 267].) In each of these cases, damage of the type covered by the policy had undisputably occurred, and the insurer relied on an unclear exclusionary clause in asserting it was not obligated to defend its insured. Here, on the other hand, the question concerns the scope of the basic coverage itself: did the federal actions potentially seek to recover for "property damage" covered by the Industrial and Mission policies?
The answer to this question depends in part on the interpretation of the policies' definitions of "property damage." (3) In construing the language of an insurance policy, a court should give the words used their plain and ordinary meaning, unless the policy clearly indicates to the contrary (Highlands Ins. Co. v. Universal Underwriters Ins. Co. (1979) 92 Cal. App.3d 171, 174-175 [154 Cal. Rptr. 683]; Farmers Ins. Exch. v. Harmon (1974) 42 Cal. App.3d 805, 809 [117 Cal. Rptr. 117)). When the language is clear, a court should not give it a strained construction to impose on the insurer a liability which it has not assumed (Pacific Employers Ins. Co. v. Maryland Casualty Co. (1966) 65 Cal.2d 318, 323 [54 Cal. Rptr. 385, 419 P.2d 641], disapproved on another point in Herzog v. National American Ins. Co. (1970) 2 Cal.3d 192, 199 [84 Cal. Rptr. 705, 465 P.2d 841]; New York Life Ins. Co. v. Hollender (1951) 38 Cal.2d 73, 81 [237 P.2d 510]; Farmers Ins. Exch. v. Harmon, supra, 42 Cal. App.3d 805, 809).
(2b) Here the policies contain three different definitions of "property damage," but the policy provisions have one crucial element in common: liability for "property damage" is covered only if some destruction of or injury to or loss of use of tangible property has occurred. *219 Understood in its plain and ordinary sense, "tangible property" means "property (as real estate) having physical substance apparent to the senses" (Webster's Third New Internat. Dict. (1968) p. 2337). To construe the explicit words "tangible property" to include intangible economic interests and property rights requires a strained and far-fetched interpretation, doing violence to the plain language of the policies. Such an interpretation would rewrite the policies to fasten on the insurers a liability they have not assumed.
(4) Moreover, strictly economic losses like lost profits, loss of goodwill, loss of the anticipated benefit of a bargain, and loss of an investment, do not constitute damage or injury to tangible property covered by a comprehensive general liability policy (Hogan v. Midland National Ins. Co. (1970) 3 Cal.3d 553, 562-563 [91 Cal. Rptr. 153, 476 P.2d 825]; Geddes & Smith, Inc. v. St. Paul Mercury Indem. Co. (1965) 63 Cal.2d 602, 609 [47 Cal. Rptr. 564, 407 P.2d 868]; Geddes & Smith, Inc. v. St. Paul Mercury Indemnity Co. (1959) 51 Cal.2d 558, 565-566 [334 P.2d 881]; St. Paul Fire & Marine Ins. Co. v. Coss (1978) 80 Cal. App.3d 888, 892-893 [145 Cal. Rptr. 836]; Fresno Economy Import Used Cars, Inc. v. United States Fid. & Guar. Co., supra, 76 Cal. App.3d 272, 279; Hamilton Die Cast, Inc. v. United States F. & G. Co. (7th Cir.1975) 508 F.2d 417, 419-420; Hartford Acc. & Ind. Co. v. Case Foundation Co. (1973) 10 Ill. App.3d 115 [294 N.E.2d 7, 13-14]; see gen. Annot. (1979) 92 A.L.R.3d 525). A complaint seeking to recover damages of this nature from an insured falls within the scope of the insurance coverage only where these intangible economic losses provide "a measure of damages to physical property which is within the policy's coverage." (Hogan v. Midland National Ins. Co., supra, 3 Cal.3d 553, 562-563; Geddes & Smith, Inc. v. St. Paul Mercury Indem. Co., supra, 63 Cal.2d 602, 609.)
(2c) Here the Giddings were entitled to a defense only if the third parties' actions potentially sought recovery for damage to or accidental loss of use of tangible property. No coverage and no duty to defend existed if the federal actions potentially sought recovery only for damage to intangible economic interests and property rights. Contrary to the Giddings' contentions, a thorough review of the complaints in the third parties' actions and the other information made available to the insurers about the nature of these actions reveals no claim which can reasonably be construed as seeking recovery for injury to tangible property. The Franklin action sought recovery of the money Franklin National Bank had paid for USNB's capital notes, now worthless. The Harmsen action *220 sought to recover for the loss of the minority shareholders' investments in USNB. The Trone complaint sought recovery for the economic losses sustained by Westgate and its subsidiaries as a result of the alleged wrongdoing of numerous defendants. The Giddings contend they were entitled to a defense in this action because the complaint alleges "waste and misappropriation" of corporate assets, which "conceivably" may have caused physical injury to or loss of use of some tangible corporate property. Nothing in the voluminous record suggests the Trone action was in any way concerned with recovery for physical damage to corporate property. Nor is there any indication such damage had even occurred in the first place. By no stretch of the imagination can the allegations of waste and misappropriation of corporate assets be transformed into allegations of physical damage to tangible property. Similarly, while the alleged waste and misappropriation of tangible corporate assets may conceivably have resulted in loss of their use, the complaint utterly fails to allege this loss was caused by an "occurrence," as defined in the Industrial policy. On the contrary, the complaint alleges a far-reaching scheme of intentional wrongdoing; there was nothing accidental about the losses alleged in the Trone complaint.
The Giddings' assertions of potential liability under the policies rest entirely on speculation and conjecture. An insurer is not obligated to defend its insured where the basis for claiming potential liability under the policy is so tenuous and far-fetched. Since none of the three federal actions potentially sought recovery for "property damage" covered by the Industrial and Mission policies, the insurers had no duty to defend the Giddings.
The judgment is affirmed.
Staniforth, J., and Wiener, J., concurred.
A petition for a rehearing was denied December 3, 1980, and appellants' petition for a hearing by the Supreme Court was denied January 14, 1981.