[No. B002219. Second Dist., Div. Three. Sept. 25, 1985.]

CAL-FARM INSURANCE COMPANY, Plaintiff and Appellant, v. TAC EXTERMINATORS, INC., et al., Defendants and Respondents.

COUNSEL

Edwards J. Roberts for Plaintiff and Appellant.

Amil Roth and Earl H. Greenstein for Defendants and Respondents.

OPINION

**KLEIN, P. J.**—Plaintiff and appellant Cal-Farm Insurance Company (Cal-Farm)[1] appeals from a declaratory judgment determining rights and obligations under a policy issued to defendant and respondent TAC Exterminators, Inc. (TAC) in its favor.

Because the general liability policy covered the nature and kind of risks in the underlying death action, Cal-Farm has a duty to defend TAC from the cross-complaint filed in said action, and the trial court's ruling to that effect is affirmed. However, because exclusion (j) is applicable, Cal-Farm need not indemnify TAC, if TAC is found to have signed an indemnity agreement with Sunset Ladder Company (Sunset Ladder) and if Sunset Ladder suffers liability in the underlying action. That part of the trial court's ruling to the contrary is reversed.

## PROCEDURAL AND FACTUAL BACKGROUND

Cal-Farm brought a declaratory relief action to determine the relative rights and duties of the parties under a policy of liability insurance issued by Cal-Farm to TAC, which was cross-complained against in an underlying wrongful death action.

On May 21, 1980, Donald Casey (Casey) was an employee of TAC and fell off a ladder while on the job. The fall resulted in injuries causing his death. The ladder was rented by TAC from Sunset Ladder. At the time of rental, a written contract was allegedly signed by TAC holding Sunset Ladder harmless from any liability.

After receiving workers' compensation benefits upon Casey's death, his widow and surviving children filed a wrongful death action naming various defendants, including Sunset Ladder, but not Casey's employer, TAC.[2]

State Compensation Insurance Fund, TAC's workers' compensation insurer, filed a lien in the wrongful death action for benefits paid to Casey's

---

[1]Also named as defendants in Cal-Farm's suit are Gera Thole, an officer, director and shareholder of TAC, who actually purchased the policy, Carl Thole, Estate of Donald Ray Casey, Merridee Casey, Michael Casey, Kim Casey, Lisa Casey, Alad Ladder Company, Bethel Lutheran Church, Sunset Ladder Company and the State Compensation Insurance Fund. All defendants were held to be prevailing parties, but only TAC and Gera Thole submitted respondent's briefs.

[2]Labor Code section 3601 provides workers' compensation as the exclusive remedy in this fact situation and bars an employee or dependents from bringing a separate suit for personal injury or death against an employer.

survivors. Sunset Ladder filed a cross-complaint against TAC and others alleging inter alia, that TAC had contracted to indemnify Sunset Ladder for any liability sustained by Sunset Ladder by reason of Casey's heirs' prevailing in their suit.

TAC tendered the defense of the cross-complaint to Cal-Farm which undertook said defense with a reservation of right to deny coverage.

Judgment in the declaratory relief action was entered on October 31, 1983, in favor of TAC, and other defendants, the trial court ruling that Cal-Farm has the duty to defend TAC, and that the policy provides indemnity coverage to TAC with respect to the subject matter in the underlying death action.

Cal-Farm appealed the ruling.

## CONTENTIONS

Cal-Farm contends TAC's general liability policy does not provide for the risks TAC is exposed to in the underlying death action because the provisions do not cover death actions. It further avers that the exclusion clauses deny relief as follows: Clause (a) denies coverage for liability assumed by TAC under any contract or agreement; clause (i) precludes coverage for any obligation for which TAC may be held liable under workers' compensation; and clause (j) eliminates coverage for bodily injury to any employee of TAC arising in the course of employment or out of any obligation of TAC to indemnify another for damages arising out of such injury.

## DISCUSSION

1. *Proper standard of review.*

■ The interpretation of an insurance policy, like any other contract, is a matter of law as to which a reviewing court must make its own independent determination. (*Boogaert* v. *Occidental Life Ins. Co.* (1983) 150 Cal.App.3d 875, 879 [198 Cal.Rptr. 357]; *Ohio Casualty Ins. Co.* v. *Hartford Accident & Indemnity Co.* (1983) 148 Cal.App.3d 641, 644 [196 Cal.Rptr. 164]; *Pechtel* v. *Universal Underwriters Ins. Co.* (1971) 15 Cal.App.3d 194, 201 [93 Cal.Rptr. 53].)

■ This court is bound by the trial court's factual findings as to the intent and expectations of TAC as to policy coverage which are supported by substantial evidence, and all factual conflicts must be resolved in favor

of the judgment. (*Underwriters Ins. Co.* v. *Purdie* (1983) 145 Cal.App.3d 57, 64 [193 Cal.Rptr. 248].) Both parties agree there are no material issues of fact in dispute.

However, since the underlying action has not yet been tried, the resolution of coverage must be determined by accepting as true all the allegations contained in the complaint in the underlying action.[3] (*Ibid.*)

2. *The general liability provisions arguably cover a wrongful death action.*

 Cal-Farm first argues the policy does not cover the underlying wrongful death action because it is limited to bodily injury and/or property damage.

The policy, entitled on the front page as GENERAL LIABILITY-AUTOMOBILE POLICY, provides for general liability insurance as follows: "The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of [¶] A. bodily injury or [¶] B. property damage [¶] to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, . . ."

Although "bodily injury" is defined in the policy as "sickness or disease sustained by a person," "damages" is defined to include "damages for death and for care and loss of services resulting from bodily injury . . . ."

Cal-Farm also argues the policy was not issued for "contractual" coverage. However, nowhere does the policy define what "contractual" liability means. Instead, the policy promises to pay all sums which TAC becomes legally obligated to pay as damages for bodily injury even if the suit is groundless, false or fraudulent.

 Insurance contracts are considered "adhesion contracts" (*Gray* v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263, 269-270 [54 Cal.Rptr. 104, 419 P.2d 168]), and courts must evaluate not only the provisions of the policy but construe them to give the protection the insured reasonably had a right to expect. (*Id.*, at p. 270, fn. 7.)

---

[3]Under Evidence Code section 459, judicial notice is taken that no judgment has been entered in the underlying wrongful death action No. C 352117.

■ Further, it is elementary insurance law that any ambiguity or uncertainty must be resolved against the insurer (*Continental Cas. Co.* v. *Phoenix Constr. Co.* (1956) 46 Cal.2d 423, 437 [296 P.2d 801]; *Steven* v. *Fidelity & Casualty Co.* (1962) 58 Cal.2d 862, 871 [27 Cal.Rptr. 172, 377 P.2d 284]), and general policy provisions are interpreted broadly so as to provide the greatest possible coverage to the insured. (*State Farm Mut. Auto. Ins. Co.* v. *Partridge* (1973) 10 Cal.3d 94, 101 [109 Cal.Rptr. 811, 514 P.2d 123].)

■ Here, an ambiguity exists as to whether death was an injury covered under the policy. Based on the above cited rules of insurance law, the ambiguity must be construed in TAC's favor. Additionally, since TAC believed it was purchasing a general liability policy, it was reasonable for it to expect the policy would provide a defense when it was cross-complained into a wrongful death action.

3. *Cal-Farm has a "duty to defend" TAC in the underlying action.*

■ Cal-Farm insists that even if TAC had coverage under the general provisions of the policy, the exclusion clauses took away such coverage, leaving it no duty to defend the cross-complaint in the underlying death action. The three relevant exclusion clauses are (a), (i) and (j). Exclusion (a) denies coverage for liability assumed by the insured under any contract or agreement. Exclusion (i) denies coverage for any obligation for which the insured may be held liable under workers' compensation or similar law. Exclusion (j) denies coverage for bodily injury to any employee arising out of the course of the worker's employment with the insured or out of any obligation of the insured to indemnify another because of damages arising out of such injury.[4]

The leading case on interpreting "duty to defend" exclusionary clauses is *Gray* v. *Zurich Insurance Co., supra,* 65 Cal.2d 263. At issue in *Gray* was whether the insured had an action against his insurer for its failure to defend him against a complaint for assault. The insurer alleged that an exclusionary clause of the policy excused it from defending an action for an intentionally caused bodily injury. (*Id.,* at pp. 266-267.)

*Gray* held the insurer must defend a suit which *potentially* seeks damages within the coverage of the policy. (*Id.,* at p. 275.) In *Gray,* as in the instant case, the insurer relied on the exclusionary clause as negating its duty to defend. The *Gray* court rejected the contention the duty to defend arises

[4]A detailed discussion of the exclusions follows in section 4.

only if the insurer is bound to indemnify the insured and held the duty to defend is *broader* than the obligation to indemnify. (*Id.*, at p. 271.)

The *Gray* court reasoned the insurer bears a duty to defend when there is merely a *potentiality* of liability because the insurance contract is one of adhesion and courts must therefore look to the reasonable expectations of the insured and moreover, it cannot be determined whether the third party indemnity claim falls within the coverage of the policy until the underlying suit is resolved. (*Id.*, at pp. 271-272.)

The holding of *Gray* has been followed in numerous cases. In *Ohio Casualty Insurance Co.* v. *Hubbard* (1984) 162 Cal.App.3d 939, 944 [208 Cal.Rptr. 806], the court found a duty to continue to defend even though there was *no longer any indemnity* on the insurer's part. There, the insurer had settled the claims for general damages (which it admittedly had a duty to defend), but the remaining claims were for economic and punitive damages only, on which the insurer had no further duty to indemnify the insured. The court held the insurer *still* had a duty to defend based on the reasonable expectations of the insured. (*Id.*, at p. 947.) Therefore, the fact that an insurer may not be ultimately liable as the indemnifier of the insured does not mean it has no duty to defend. (*Id.*, at p. 944.)

In *Val's Painting & Drywall, Inc.* v. *Allstate Ins. Co.* (1975) 53 Cal.App.3d 576 [126 Cal.Rptr. 267], a case factually similar to the instant one, the rules of *Gray* were followed. There, two employee painters were hurt in a fall from a scaffold and sued the supplier of the scaffold. The supplier cross-complained on an indemnity contract against the painters' employer, Val's Painting, which was insured by a comprehensive general liability policy.

Although Allstate initially refused to defend against the cross-complaint, it later did so under a "reservation of rights" and settled the action. Val's Painting sued Allstate for expenses incurred before Allstate assumed the defense and Allstate cross-complained for its expenses and the settlement payment. (*Val's Painting & Drywall, Inc.* v. *Allstate Ins. Co.*, *supra*, at pp. 579-581.)

Allstate alleged it should be reimbursed for its defense and settlement costs because Val's Painting had signed an equipment rental agreement which purported to indemnify and hold the scaffold supplier harmless from all claims and liabilities arising out of the use of the scaffold. (*Id.*, at pp. 580-581.)

The policy in *Val's Painting* was comprehensive general liability insurance which provided coverage for bodily injury or property damage even if the allegations of the suit were groundless, false or fraudulent. The pertinent exclusionary clauses were: "(a) *liability* assumed by the insured under any contract or agreement except an incidental contract; (g) any obligation for which the insured or any carrier as his insurer may be held liable under any workmen's compensation, unemployment compensation or disability benefits law, or under any similar law; and (h) bodily injury to any employee of the insured arising out of and in the course of his employment by the insured, but this exclusion does not apply to liability assumed by the insured under an incidental contract." (*Id.*, at p. 583, italics added.)

Noting that Labor Code section 3864 eliminates an employer's liability for implied indemnity in the absence of a written agreement, the court held that although exclusion (a) in Val's Painting's policy might be intended to exclude from coverage such a written agreement, "the fact that Allstate may not be liable to indemnify the insured does not necessarily mean there is no duty to defend."[5] (*Val's Painting & Drywall, Inc.* v. *Allstate Ins. Co.*, supra, at p. 584.)

The court reasoned that had the scaffold supplier sued Val's Painting for implied indemnity without the benefit of a written agreement, Allstate would have been obligated to defend because the suit arose out of an action for damages for bodily injury, a risk which was of the nature and kind covered by the comprehensive policy. Admittedly, the defense would have been an easy one—a demurrer for failure to state a cause of action by virtue of Labor Code section 3864. The absence of liability could be easily established but the costs of defense would have fallen to Allstate as it had promised to defend any suit against Val's Painting even if the allegations of the suit were groundless. (*Ibid.*)

The *Val's Painting* court noted that even though a written indemnity agreement was alleged, it did not necessarily preclude the insurer's duty to defend because the employer might have a valid defense to the written agreement such as the employer's agent had no authority to enter into a written indemnity agreement, or the contract was one of adhesion, or the contract was invalid for any other reason. The validity of the rental agree-

---

[5]Labor Code section 3864 states in pertinent part: "If an action . . . prosecuted by the employee, . . . against the third person results in judgment against such third person, or settlement by such third person, the employer shall have no liability to reimburse or hold such third person harmless on such judgment or settlement in *absence of a written agreement* so to do executed prior to the injury." (Italics added.)

ment would be an issue in the very action the insurer was called on to defend. (*Id.,* at p. 585.)

In the instant case, there are no significant factual differences. The wrongful death action arose out of Casey's injury on the job and TAC was cross-complained in by Sunset Ladder based on a written indemnity agreement. Also, the wrongful death action arose from a bodily injury ending in death so as to be a risk of the nature and kind covered by the comprehensive policy. The validity of the written agreement and any defenses to it will also be at issue in the underlying action. Lastly, the disputed exclusionary clauses are almost identical to those in *Val's Painting* and cannot be determined without reference to the written agreement. The only difference in *Val's Painting* is procedural—there, the cross-complainant's action had been settled and Allstate was seeking reimbursement; here, the underlying action has not yet been tried.

Cal-Farm is misled in its citation of *State Farm Fire & Casualty Co.* v. *Drasin* (1984) 152 Cal.App.3d 864 [199 Cal.Rptr. 749]. There, the court found no duty to defend because the malicious prosecution complaint did not potentially seek damages that came within the coverage of the policy.[6] (*Id.,* at p. 868.)

Other cases have further clarified the distinction between the situation presented in *Gray* as compared to that in *State Farm/Drasin*. In *Gray* and in the many cases following it, the issue was one of a broad coverage clause and the effect of an exclusionary clause. In these cases, damage of the type covered by the broad coverage clause had undisputedly occurred, but the insurer relied on an unclear exclusionary clause in asserting it was not obligated to defend. However, these courts made it clear that a risk falling outside the scope of the general clause did not give rise to a duty to defend. In *State Farm/Drasin,* on the other hand, the question concerns the scope of the basic coverage. (See, e.g., *Fresno Economy Import Used Cars, Inc.* v. *United States Fid. & Guar. Co.* (1977) 76 Cal.App.3d 272, 281 [142 Cal.Rptr. 681]; *Giddings* v. *Industrial Indemnity Co.* (1980) 112 Cal.App.3d 213, 218 [169 Cal.Rptr. 278]; *St. Paul Fire & Marine Ins. Co.* v. *Superior Court* (1984) 161 Cal.App.3d 1199, 1203, fn. 1 [208 Cal.Rptr. 5].)

---

[6]In all likelihood, the *State Farm/Drasin* court was aware of *Val's Painting* as the author of the latter concurred in the former decision.

4. *If in the underlying action, Sunset Ladder is found liable and the alleged indemnity contract between TAC and Sunset Ladder is found valid then Cal-Farm need not indemnify TAC based on exclusion (j).*

The duty to defend is broader than the obligation to indemnify (*Fresno Economy Import Used Cars, Inc.* v. *United States Fid. & Guar. Co., supra,* 76 Cal.App.3d at p. 278), and this duty may exist even if the questioned policy is held not to cover liability pursuant to an indemnity contract. (*Ohio Casualty Insurance Co.* v. *Hubbard, supra,* 162 Cal.App.3d at p. 944.) Hence, while Cal-Farm has a duty to defend TAC in the underlying action, we now consider whether any of the exclusionary clauses take away the coverage provided under the general provisions. (See section 2, *ante.*)

■ While general coverage clauses are interpreted broadly to afford the greatest possible protection to the insured, exclusionary clauses are interpreted narrowly against the insurer. (*State Farm Mut. Auto. Ins. Co.* v. *Partridge, supra,* 10 Cal.3d at pp. 101-102.)

Any exception to the performance of the basic underlying obligation must be stated clearly to apprise the insured of its effect. (*Gray* v. *Zurich Insurance Co., supra,* 65 Cal.2d at p. 269; *State Farm Mut. Auto. Ins. Co.* v. *Jacober* (1973) 10 Cal.3d 193, 201 [110 Cal.Rptr. 1, 514 P.2d 953].) These exclusions or exceptions must be conspicuous, plain, and clear. (*Gray* v. *Zurich Insurance Co., supra,* at p. 273; *State Farm Mut. Auto. Ins. Co.* v. *Jacober, supra,* at p. 202.)

■ Cal-Farm maintains the exclusions were conspicuous. We agree.

Courts have invalidated exclusions as not conspicuous where not in a section labeled exclusions and placed on an overcrowded page (*Schmidt* v. *Pacific Mut. Life Ins. Co.* (1969) 268 Cal.App.2d 735, 740 [74 Cal.Rptr. 367]; *Miller* v. *Elite Ins. Co.* (1980) 100 Cal.App.3d 739, 752 [161 Cal.Rptr. 322]), or in a section labeled "'General Limitations'" but in a "'dense pack'" format (*Ponder* v. *Blue Cross of Southern California* (1983) 145 Cal.App.3d 709, 722 [193 Cal.Rptr. 632]), or hidden in a subsequent section of the policy bearing no clear relationship to the insuring clause and concealed in fine print (*Gray* v. *Zurich Insurance Co., supra,* 65 Cal.2d at p. 273).

But our Supreme Court held an exclusion clause conspicuous as a matter of law when it was found in a section under the bold face heading "EXCLUSIONS," in printing the size and intensity identical to the rest of the policy.

(*National Ins. Underwriters* v. *Carter* (1976) 17 Cal.3d 380, 384-385 [131 Cal.Rptr. 42, 551 P.2d 362].)

The exclusions clauses at issue are found under a section labeled "Exclusions" in bold face; are of identical size and intensity of the rest of the policy; and are divided into two columns on the page so as not to be a dense pack. But in any event, exclusion clauses do not fail merely because of the density of verbiage. (*Ponder* v. *Blue Cross of Southern California, supra,* 145 Cal.App.3d at p. 722.) Therefore, as a matter of law, we find the exclusions conspicuous.

■■■ The next question is whether the exclusions were "plain and clear," and therefore applicable to the instant case. The trial court found the clauses ambiguous and therefore inapplicable. ■ When as here, the trial court interpreted the contract without aid of extrinsic evidence, the appellate court is not bound by the findings of the trial court. On the contrary, it is the duty of the appellate court to make its own *independent* determination of the meaning of the language of the contract at issue. (*Schmidt* v. *Pacific Mut. Life Ins. Co., supra,* 268 Cal.App.2d at p. 738.)

■ The insurer bears the burden to draft the exclusionary clauses in clear language comprehensible to a lay person. (*Ponder* v. *Blue Cross of Southern California, supra,* 145 Cal.App.3d at p. 723.) "The policy should be read as a layman would read it, interpreting the terms in an ordinary and popular sense as a person of average intelligence and experience would understand them." (*Miller* v. *Elite Ins. Co., supra,* 100 Cal.App.3d at p. 751.)

■ First we consider exclusion (a). The policy states: "This insurance does not apply: [¶] (a) to liability assumed by the insured under any contract or agreement except an incidental contract; . . ."[7]

This exclusion refers to liability assumed under contract, but it does not specify what kind of contract. While it could be referring to an indemnity contract, such as the one in the instant case, it could also mean *any* contract TAC might enter into in the ordinary course of business. Because of this infirmity, exclusion (a) is *not* plain and clear, and so does not serve to limit coverage under the general terms of the policy.

■ Cal-Farm next raises, for the first time on appeal, that exclusion (i) precludes coverage. This exclusion states that the policy does not apply

---

[7]The definition in the policy of an incidental contract does not include a contract to indemnify such as the one alleged here.

"to any obligation for which the insured or any carrier as his insurer may be held liable under any workmen's compensation, unemployment compensation or disability benefits law, or under any similar law; . . ."

If this were a serious contention by Cal-Farm, it should have been raised before the trial court, so as to give that court an opportunity to rule on it. However, we find Cal-Farm's argument has no merit.

The underlying action is not an obligation under TAC's worker's compensation, but rather a third party indemnity action in a wrongful death suit. Under Labor Code section 3601 (see fn. 2), Casey's dependents (with a few limited exceptions) cannot sue TAC directly. An indemnity agreement is the only way TAC might be held liable to Casey's dependents outside of worker's compensation because Labor Code section 3864 (see fn. 5) precludes third party suits for indemnity *absent a written agreement*. Therefore, exclusion (i) adds nothing to the policy as it merely states what is already the law.

Lastly, Cal-Farm argues that exclusion (j) precludes coverage. This exclusion disallows coverage: "(j) to bodily injury to any employee of the insured arising out of and in the course of his employment by the insured or to any obligation of the insured to indemnify another because of damages arising out of such injury; but this exclusion does not apply to liability assumed by the insured under an incidental contract; . . ."

On its face, this exclusion would appear to exactly fit the instant situation where TAC has allegedly entered into a written agreement to indemnify Sunset Ladder. We are mindful that as a general rule, an insured is bound by the provisions of the contract, and cannot complain of unfamiliarity with them. Thus, the insured has a duty to read the policy. (*Fields* v. *Blue Shield of California* (1985) 163 Cal.App.3d 570, 578 [209 Cal.Rptr. 781].)

The trial court found exclusion (j), unlike exclusion (a), specified an obligation to indemnify, and therefore was specific and could apply to the instant facts. However, the trial court went on to note that exclusion (j) could only negate Cal-Farm's coverage if "bodily injury" included death. The trial court interpreted "bodily injury" in the exclusion as not including death because Cal-Farm had not defined "bodily injury" to include death and California cases do not read "death" into the phrase "bodily injury" in an exclusion clause. We find this unpersuasive.

Exclusion (j) is written in the disjunctive. It speaks of "bodily injury" to an employee arising out of, and in the course of, the employment by the

insured *or* to any obligation of the insured to indemnify another because of "damages" arising from such injury. ■■■ It should be almost unnecessary to point out that in its ordinary sense the word "or" indicates an alternative as "either this or that." (*Los Angeles County-U.S.C. Medical Center* v. *Superior Court* (1984) 155 Cal.App.3d 454, 461 [202 Cal.Rptr. 222].) ■■■ Hence, the phrases separated by "or" are *alternatives* to each other.

Although the trial court focused on the ambiguity surrounding the definition of "bodily injury," as discussed in section 2, the instant policy clearly defined "damages" to include "damages for death and for care and loss of services resulting from bodily injury . . . ."

Inserting the policy's definition of damages into the part of exclusion (j) following "or," this section would now read "This insurance does not apply: [¶] . . .; [¶] (j) . . . to any obligation of the insured to indemnify another because of *damages [for death]* arising out of such [bodily] injury." (Italics added.)

Read as such, that part of exclusion (j) clearly applies to the instant case, and precludes coverage in the instant case *if* Sunset Ladder is found liable in the underlying action and *if* none of TAC's defenses to the alleged indemnity contract is found valid.

We are aware that holding exclusion (j) disallows coverage if in the underlying action Sunset Ladder is held liable and the alleged indemnity agreement between TAC and Sunset Ladder is valid, makes for the interesting situation of Cal-Farm's having a duty to defend, even though it may not have to indemnify TAC against a loss under the alleged contract. This is not as incongruous as it seems.

If we were to hold otherwise, any time an insurance company had a questionable claim due to an uncertain exclusion clause, it could defend, under a reservation of rights, and immediately bring an action for declaratory relief seeking to rid itself of the arguable duty to defend. As a result, the duty to defend would eventually be no broader than the duty to indemnify.

Here, Cal-Farm did exactly that. It brought a suit for declaratory relief *before* the underlying suit has been tried. Other cases involved insurance companies seeking reimbursement for costs expended upon defense after the cases had been tried. ■■■ But duty to defend is determined *at the time*

*suit is brought;* not at the conclusion of litigation. (7C Appleman, Insurance Law and Practice (Berdal ed. 1979) § 4684, p. 85.)

Further, in *Val's Painting* where the action for defense costs reimbursement was brought *after* the insurance company had settled the claim, the court observed the insurance company might be able to amend its complaint to show the disputed claim *was not in fact covered by the policy* because an exclusion applied. Irrespective of this possibility, the court held the insurance company had a duty to defend Val's Painting against the claim. (*Val's Painting & Drywall, Inc.* v. *Allstate Ins. Co.,* supra, 53 Cal.App.3d at pp. 581-582, 585; see, e.g., *Ohio Casualty Insurance Co.* v. *Hubbard,* supra, 162 Cal.App.3d at p. 944.)

The *Val's Painting* court reasoned that since implied indemnity could not apply, Val's Painting would be liable only because of a written agreement. But the validity of the written agreement was an issue in the very action the insurance company was called upon to defend. (*Val's Painting & Drywall, Inc.* v. *Allstate Ins. Co.,* supra, at pp. 584-585.)

Citing to *Val's Painting,* a well-known insurance treatise succinctly stated that an insurer could not rely on an exclusion limiting liability assumed under contract where the validity of the written indemnification agreement was at issue in the very action for which a defense was sought. (7C Appleman, *supra,* § 4685.01, p. 137.)

*5. No sanctions should be imposed because Cal-Farm's appeal was obviously not frivolous.*

■ Code of Civil Procedure section 907 and California Rules of Court, rule 26(a) allow the reviewing court to impose sanctions on a party if the appeal was frivolous or taken solely for delay. An appeal is frivolous only when it is presented for an improper motive, or when it indisputedly has no merit. (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650 [183 Cal.Rptr. 508, 646 P.2d 179].)

As we are reversing in part, we obviously do not find this appeal frivolous.

### CONCLUSION

TAC's comprehensive general liability policy provided coverage for the nature and kind of risk alleged in the wrongful death suit; therefore, Cal-Farm has the duty to defend TAC against the cross-complaint in that action.

Because exclusion (j) may be applicable, Cal-Farm need not indemnify TAC, if TAC is found to have signed an indemnity agreement with Sunset Ladder and Sunset Ladder suffers liability in the underlying action.[8]

### DISPOSITION

The judgment is affirmed in part and reversed in part. Each party to bear its own costs on appeal.

Danielson, J., and Arabian, J., concurred.

A petition for a rehearing was denied October 21, 1985.

---

[8] As to Gera Thole's coverage by TAC's insurance policy, under definitions the policy states: " 'insured' means any person or organization qualifying as an insured in the 'Persons Insured' provision of the applicable insurance coverage. The insurance afforded applies separately to each insured against whom claim is made or suit is brought, . . ." The policy also provides the following: "II PERSONS INSURED [¶] Each of the following is an insured under this insurance to the extent set forth below: [¶] . . . . [¶] (c) if the named insured is designated in the declarations as other than an individual, partnership or joint venture, the organization so designated and any executive officer, director or stockholder thereof while acting within the scope of his [sic] duties as such; . . ."

Based on the above, it would appear the insurance would cover Thole to the extent it covers TAC, while acting within the scope of her duties as an officer, director and share-holder of TAC.

As for her liability, if any, as well as TAC's, that obviously is within the province of the trial court in the underlying action.