5 F.3d 538
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 PENNSYLVANIA GENERAL INSURANCE COMPANY, Plaintiff-Appellee,
v.
DISCTRONICS, INC., Defendant-Appellant,
and
Robert M. Jones; Dale F. Rodesch, Defendants.
 No. 92-55142.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted July 14, 1993.
Decided Sept. 8, 1993.
 
 Appeal from the United States District Court for the Central District of California, D.C. No. CV-90-6651-R; Manuel L. Real, Chief Judge, Presiding.
 C.D.Cal.
 AFFIRMED.
 Before: WOOD, Jr.,* REINHARDT and RYMER, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Disctronics, Inc., seeks reversal of a summary judgment which held Pennsylvania General Insurance Company had no duty to defend Disctronics in a separate lawsuit. For reasons stated below, we affirm.
 
 I. BACKGROUND
 
 3
 Dale F. Rodesch and Robert M. Jones (collectively referred to as "Rodesch") manufacture a video horse racing gambling machine. The machine uses laser discs to generate the audio and the visual image. Disctronics Inc. manufactures laser discs and other audio and visual storage products. At a client's request, Disctronics duplicated and sold 1,000 copies of "Quarter Horse Video Discs" to that client for use in competing horse racing gambling machines. These discs were produced by Disctronics from videotapes supplied by the client; they contain images and sounds of numerous quarter horse races run at a professional race track.
 
 
 4
 On May 2, 1989, Rodesch filed a complaint in the United States District Court, Central District, California, alleging copyright and trade dress infringement by Disctronic's duplication of the Quarter Horse Video Discs (the "underlying action"). The complaint sought damages, an injunction against duplicating the video discs, destruction of remaining discs, and attorneys fees. After being sued by Rodesch, Disctronics turned to its insurance company, Pennsylvania General Insurance Co., for help. Pennsylvania General took over Disctronics's defense for several months. After conducting discovery, the insurance company decided it was not bound by the terms of its contract to defend Disctronics.
 
 
 5
 On February 1, 1990, Pennsylvania General filed a complaint seeking a declaratory judgment to determine its obligations to Disctronics. Pennsylvania General alleged it owed no duty to defend Disctronics in the underlying action. Disctronics answered the complaint a month later; the company claimed the insurance contract provided coverage and that Pennsylvania General was estopped from denying coverage. Regarding estoppel, the company argued simply that "Disctronics was prejudiced by its reliance on plaintiff's representations that it would defend Disctronics in the Rodesch action." Disctronics did not elaborate as to how it was prejudiced.
 
 
 6
 On April 27, 1990, the district court stayed the insurance company's declaratory judgment action pending the outcome of the underlying copyright action. On April 3, 1991, Judge Real granted summary judgment in the underlying action in favor of Disctronics and lifted the stay in the declaratory judgment action. Rodesch has appealed the judge's decision in the underlying action; that appeal is currently pending before another panel of this court.
 
 
 7
 After the stay was lifted in this action, both Pennsylvania General and Disctronics filed motions for summary judgment. The court granted judgment in favor of Pennsylvania General on December 31, 1991. Disctronics now appeals, requesting we reverse the district court and remand with instructions to grant summary judgment in Disctronics's favor or alternatively, to proceed to trial.
 
 II. DISCUSSION
 
 8
 Disctronics advances two arguments for reversing the district court: 1) the court erred in finding Pennsylvania General had not contracted to defend Disctronics in the underlying action; and 2) the court erred in finding Pennsylvania General was not estopped to deny coverage to Disctronics.
 
 
 9
 We review a grant of summary judgment de novo and view the evidence in the light most favorable to the nonmoving party. Our job is to determine (1) whether there are any genuine issues of material fact and (2) whether the district court applied the relevant substantive law. Fu-Kong Tzung v. State Farm Fire & Casualty Co., 873 F.2d 1338, 1339-40 (9th Cir.1989); Kruso v. International Tel. & Tel. Corp., 872 F.2d 1416, 1421 (9th Cir.1989), cert. denied, 496 U.S. 937 (1990). Summary judgment is not appropriate if a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).
 
 A. The Insurance Contract
 
 10
 At the time of the alleged copyright and trade dress infringements, Disctronics was covered by Pennsylvania General's commercial general liability policy. One section of the contract, entitled "Personal and Advertising Injury Liability," provided that the insurance company "will pay those sums that the insured becomes legally obligated to pay as damages because of 'personal injury' or 'advertising injury' to which this insurance applies.... We will have the right and duty to defend any 'suit' seeking those damages." "Advertising injury" was only covered "if caused by an offense committed ... [i]n the course of advertising your goods, products or services."
 
 
 11
 Unfortunately, the contract did not define the term "advertising." Appellant claims Rodesch sued Disctronics for injuries occurring in the course of its advertising and thus the contract obligated Pennsylvania General to defend Disctronics. Pennsylvania General takes the contrary position, asserting Rodesch sued Disctronics for injuries stemming solely from the company's manufacturing, which the contract clearly does not cover.
 
 
 12
 Disctronics defines "advertising" as the act of calling the public's attention to a matter. The manufacturer says it did not advertise its Quarter Horse Video Discs through conventional means, such as newspaper advertisements or television commercials, but instead relied on word-of-mouth and customer satisfaction. Disctronics claims it lets its discs "speak for themselves" and thus "the alleged infringing discs themselves served as Disctronics advertising tools."
 
 
 13
 The manufacturer tries to support this claim by pointing to its practice of producing a "one-off" video disc for customers. When a customer wishes to have video disc reproductions, the manufacturer takes the customer's master video tape and records a single "one-off" video disc. The customer inspects the "one-off" disc and, if satisfied, may order the reproductions in quantity. Disctronics claims the "one-off" disc is a "selling tool" and equates it with an advertisement. Disctronics asserts California law supports this expansive view of the term "advertising."
 
 
 14
 Disctronics points to Cal-Farm Insurance Co. v. TAC Exterminators, Inc., 218 Cal.Rptr. 407 (Ct.App.1985), where the California Court of Appeal labeled insurance contracts as "adhesion contracts" and stated that "it is elementary insurance law that any ambiguity or uncertainty must be resolved against the insurer, and general policy provisions are interpreted broadly so as to provide the greatest possible coverage to the insured." Id. at 410-11; accord State Farm Mut. Auto. Ins. Co. v. Partridge, 109 Cal.Rptr. 811, 816 (1973).
 
 
 15
 Disctronics fails to note that the California appellate court also stated that courts must construe insurance policies "to give the protection the insured reasonably had a right to expect." Cal-Farm, 218 Cal.Rptr. at 411. In Producers Dairy Delivery Co. v. Sentry Insurance Co., 226 Cal.Rptr. 558 (1986), the Supreme Court of California reiterated this principle and said the court is "guided by the principle that words in an insurance policy must be read in their ordinary sense, and any ambiguity cannot be based on a strained interpretation of the policy language." Id. at 563.
 
 
 16
 The state's high court stated this same principle in slightly different words in Reserve Insurance Co. v. Pisciotta, 180 Cal.Rptr. 628 (1982): "Words used in an insurance policy are to be interpreted according to the plain meaning which a layman would ordinarily attach to them. Courts will not adopt a strained or absurd interpretation in order to create an ambiguity where none exists." Id. at 631-32. Disctronics argues it is neither strained or absurd to interpret "advertising" as being ambiguous, and points to a series of California cases which it says supports the thesis that the term "advertising," when not defined in an insurance policy, is ambiguous and thus is to be strictly construed against the insurance company.
 
 
 17
 After carefully considering these cases, we do not find they compel or even suggest this court must rule in Disctronics's favor. While the outer boundaries of the term "advertising" may be ambiguous, none of the cases Disctronics cites embrace the definition of advertising which Disctronics advocates. Cf. National Union Fire Ins. Co. v. Siliconix Inc., 729 F.Supp. 77, 79 (N.D.Cal.1989) (rejecting argument that advertising product is synonymous with selling product); Bank of the West v. Superior Court, 10 Cal.Rptr.2d 538 (1992) (finding no connection between bank's advertising activities and sale of insurance policies to consumers where bank's advertising was only directed to insurance brokers).
 
 
 18
 We are unpersuaded that Disctronics's "one-off" is the equivalent of advertising. The "one-off" is not a free sample Disctronics provides to potential customers; Disctronics charged a hefty $750 for the "one-off" in the underlying action. The "one-off" is much closer to a proof a printer provides his or his customer for inspection prior to duplicating the product in quantity. If Disctronics's position were accepted the insurance company would be liable for every injury resulting from the manufacture and sale of Quarter Horse Video Discs. To accept Disctronics's interpretation would go beyond the protection the insured reasonably had a right to expect.
 
 B. Estoppel
 
 19
 Regardless of whether the contract obligated Pennsylvania General to bear Disctronics's costs of defending the underlying suit, Disctronics says Pennsylvania General's conduct has estopped it from denying this obligation. A review of the insurer's conduct is in order. On May 2, 1989, Disctronics was served with Rodesch's complaint. Disctronics retained its regular attorneys, Latham & Watkins. In September 1989 Disctronics tendered defense of the action to Pennsylvania General. On September 19, 1989, the insurance company agreed to represent Disctronics but insisted upon using its own lawyers, Schaeffer & Lax. Disctronics agreed and in October 1989 Schaeffer & Lax was substituted as counsel of record.
 
 
 20
 Schaeffer & Lax then proceeded to take most of the substantive depositions for Disctronics. As discovery progressed, Pennsylvania General became concerned that it might not be contractually obligated to defend Disctronics. On December 18, 1989, Pennsylvania General informed Disctronics it would seek a coverage opinion. On January 23, 1990, Pennsylvania General informed Disctronics the contract did not cover the alleged harm. The insurer also stated it would proceed with Disctronics's defense under a full reservation of rights. Schaeffer & Lax, though, was reluctant to continue representation of Disctronics. In April 1990 Pennsylvania General and Disctronics reached an agreement whereby Disctronics again retained Latham & Watkins and Pennsylvania General agreed to bear a portion of the law firm's fees.
 
 
 21
 Disctronics now says that by having been forced to switch counsel twice it suffered prejudice and maintains Pennsylvania General is therefore equitably estopped from denying coverage. To find equitable estoppel a litigant must show: (1) the party to be estopped had knowledge of the true facts; (2) action by the party was intended or reasonably interpreted as intended to be acted upon by the person asserting estoppel; (3) the person asserting estoppel was ignorant of the true facts; and (4) the person asserting estoppel detrimentally relied on the other party's conduct. Strong v. County of Santa Cruz, 125 Cal.Rptr. 896 (1975); Miller v. Elite Ins. Co., 161 Cal.Rptr. 322, 330 (Ct.App.1980).
 
 
 22
 Detrimental reliance means the person asserting estoppel suffered prejudice. Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1559 (9th Cir.1991). "Prejudice exists where the insured, in reliance on the insurer's defense under the policy, fails to retain an attorney, fails to negotiate a settlement, and fails to deal directly with the opposing party or counsel." Insurance Co. of the West v. Haralambos Beverage Co., 241 Cal.Rptr. 427, 433 (Ct.App.1987). Other factors to be considered in determining whether an insured has been prejudiced by its insurer's withdrawal of defense include "the insured's loss of a favorable settlement opportunity or defense, its inability to produce all testimony in support of the defense, its inability to produce any material witness, or withdrawal so near the time of trial that the insured is hampered in preparing its defense." Underwriters at Lloyds v. Denali Seafoods, Inc., 927 F.2d 459, 464 (9th Cir.1991).
 
 
 23
 Pennsylvania General argues none of the above factors are present in this case. It points out that only three months elapsed from the time it undertook Disctronics's defense to the time it notified the manufacturer it had questions regarding its obligation to defend. The insurer also notes that Disctronics has not criticized the legal work by the insurance company's counsel, Schaeffer & Lax. Additionally, Pennsylvania General has compensated Disctronics to some extent for the cost in switching counsel.
 
 
 24
 Disctronics maintains it was prejudiced by the "loss of insight and continuity in representation" by the withdrawal of its personal counsel and later by its insurer-provided counsel. Regarding the second withdrawal, Disctronics says it caused "delays and inefficiencies." Disctronics has not alleged, either before this court or in its answer to Pennsylvania General's complaint for a declaratory judgment, any other harm. Disctronics's sole theory seems to be that by having switched counsel, at Pennsylvania General's request, it suffered prejudice. Yet the two cases Disctronics cites in support of this theory, Tomerlin v. Canadian Indemnity Co., 39 Cal.Rptr. 731 (1964), and Hartford Fire Insurance Co. v. Spartan Realty International, Inc., 242 Cal.Rptr. 462 (Ct.App.1987), do not stand for the proposition that changing counsel invariably produces prejudice.
 
 
 25
 The district court was not persuaded that there was a genuine issue of fact as to whether Disctronics suffered prejudice. Neither are we. While it is certainly more convenient to retain the same counsel throughout litigation, Disctronics has simply failed to allege or show any detrimental reliance that would equitably estop Pennsylvania General from denying coverage.
 
 III. CONCLUSION
 
 26
 Disctronics has presented no proof that there are any genuine issues of material fact, nor that the district court failed to apply the relevant substantive law. For these reasons, we affirm the summary judgment below.
 
 
 27
 AFFIRMED.
 
 
 
 *
 The Honorable Harlington Wood, Jr., United States Senior Circuit Judge for the Seventh Circuit, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3