**PROVIDENT LIFE & ACCIDENT INS. CO., Plaintiff,**

v.

**John HENRY Defendant.**

**John Henry, Counterclaimant,**

v.

**Provident Life & Accident Ins. Co., Counterdefendant.**

**No. SACV99–725–GLTKDV.**

United States District Court, C.D. California, Southern Division.

July 25, 2000.

SUPPLEMENTAL ORDER ON CROSS MOTIONS FOR SUMMARY ADJUDICATION

TAYLOR, District Judge.

On apparent first impression in the Ninth Circuit, the Court holds a disability insurance policy may condition benefits on the insured's consent to appropriate medical care, which may include surgery.

## I. *BACKGROUND*

In 1988 Provident Life & Accident Ins. Co. issued disability coverage to the insured doctor. Since 1997 Provident has paid policy disability benefits, with a reservation of rights, on the doctor's claim that carpal tunnel syndrome makes him unable to practice his occupation as a podiatric surgeon.

The coverage contains an "appropriate care" provision requiring the insured to "receiv[e] care by a Physician which is appropriate for the condition causing the disability."

In 1999 Provident sued the doctor for declaratory relief, money had and received, and restitution of benefits. Provident asserts the insured failed to fulfill the "appropriate care" policy provision. Among other things, Provident contends the insured had a duty to undergo carpal tunnel syndrome release surgery. Provident contends more conservative treatment has failed, and the surgery in question is a common, low-risk procedure with the potential to cure the insured's disability and enable him to return to his practice. Provident argues the policy's appropriate-care provision obligates the insured to submit to carpal tunnel syndrome release surgery because it is appropriate treatment under the circumstances.

The insured asserts Provident cannot require him to have surgery as a condition of his benefits without specific policy language alerting him he could be required to undergo surgery. He contends the appropriate-care provision fails to do that.

Robert E. Hess, Barger & Wolen, Irvine, CA, for Plaintiff.

David T. Bamberger, Shernoff Bidart Darras & Dillon, Claremont, CA, for Defendant.

## II. DISCUSSION

■ The Court interprets the policy's appropriate-care provision to create a duty to submit to appropriate medical treatment which, in some circumstances, may include a surgical procedure.

■ A court interpreting an insurance contract under California law must adhere strictly to the language of the contract. The court must interpret any ambiguities in the insured's favor and construe language according to the expectations or understanding of a reasonable person. The court cannot interpret the policy to add insured's duties not evident in the language of the contract. See, e.g. *Saltarelli v. Bob Baker Group Medical Trust*, 35 F.3d 382, 386–87 (9th Cir.1994); *Cal–Farm Ins. Co. v. TAC Exterminators*, 172 Cal. App.3d 564, 572–73, 218 Cal.Rptr. 407 (1985).

This Court's construction of the policy's appropriate care provision conforms to these principles of insurance contract interpretation. The policy does not state that the insured must obey every doctor's recommendation or defer to Provident's judgment about the appropriate care for his condition. Provident does not have that power, and the Court does not interpret the policy to create it. Instead, the Court interprets the policy's plain language to require "appropriate" medical treatment. This would be determined objectively as the treatment a patient would make a reasonable decision to accept after duly considering the opinions of medical professionals. It is commonly understood that, under some circumstances, the appropriate medical treatment for some conditions may be surgical.

In support of the insured's proposed construction of the appropriate care clause, he relies on *Heller v. Equitable Life Assurance Society of United States*, 833 F.2d 1253 (7th Cir.1987). In *Heller*, the court refused to allow an insurer to condition a carpal tunnel syndrome-disabled doctor's benefits on release surgery based on a policy provision requiring the insured to be "under the regular care and attendance of a physician." *Id.* at 1255. *Heller* found the physician's care provision required no more than regular monitoring of the insured by a physician to determine whether the disabling condition persisted. *Id.* at 1257

The *Heller* court cited a Delaware case, *Casson v. Nationwide Ins. Co.*, as concluding "the majority view does not even require the insured to minimize his disability with medical treatment absent a specific contractual requirement, much less require an insured to submit to surgery." *Id.* at 1258 n. 10, citing *Casson*, 455 A.2d 361 (Del.Super.1982) collecting cases. The *Casson* court explained more fully that the "apparent" majority view

> is based upon the principle that an insured should not be required to incur expense or risk injury or death where the insurer who drafted the contract did not incorporate such a provision. The imposition by law of such a requirement would, in effect, enlarge the terms of the policy beyond those agreed to by the parties.

*Casson*, 455 A.2d at 366–67. Thus, *Casson* notes the majority of courts will not imply an appropriate treatment requirement (surgical or otherwise) into insurance contracts. *Heller* declined to interpret "regular care and attendance [of the insured by] a physician" to mean appropriate care for the insured's condition, or to imply an appropriate-care requirement into a contract it interpreted as not containing one.

Neither *Heller* nor *Casson* is inconsistent with this Court's conclusion that the appropriate-care provision here creates an explicit duty to seek and accept appropriate treatment. The policy provision is broad and unambiguous, and does not enumerate the particular treatments contemplated.

The insured argues appropriate-care provisions are intended only to require monitoring of the insured's condition by a physician. However, this appropriate-care

provision does not merely state the insured must be under a doctor's care. It provides the insured must receive from a doctor the *appropriate* care *for* his *condition.* The only reasonable interpretation of this clause is that it imposes a duty on the insured to seek and accept appropriate care for his disabling condition.[1]

The insured argues a policy interpretation allowing Provident to condition benefits on his acceptance of appropriate treatment violates California's public policy recognizing a strong right to control one's own medical care. *See, e.g., Bartling v. Superior Court,* 163 Cal.App.3d 186, 194, 209 Cal.Rptr. 220 (1984)(describing "a clearly recognized legal right [in California] to control one's own medical treatment," and noting "a competent adult patient has the legal right to refuse medical treatment.") However, requiring an insured to adhere to the terms of his insurance contract by accepting appropriate care in order to receive contractual disability payments does not deprive the insured of the ultimate choice in his treatment. California's public policy is not harmed by allowing people to make contracts which provide they will receive appropriate care for disabling conditions.

■ There exists a triable issue whether, under the circumstances of this insured's disability, carpal tunnel syndrome release surgery is appropriate care. The parties present evidence on both sides. There remains a genuine issue of material fact whether Defendant has fulfilled his duty under the appropriate-care policy provision.[2]

---

1. Because the Court finds the policy's appropriate-care provision imposes a duty on the insured to accept appropriate treatment, it does not address the issues whether such a duty can be implied in an insurance policy from the insured's duty of good faith and fair dealing or by analogy to social security, workers' compensation, or tort law.

2. In accordance with 28 U.S.C. § 1292(b), the Court is of the opinion that this order involves a controlling question of law as to which there is substantial ground for difference of opinion, and an immediate appeal from this order may materially advance the ultimate termination of the litigation.