[No. B006659. Second Dist., Div. Four. Dec. 18, 1984.]

OHIO CASUALTY INSURANCE COMPANY,
Plaintiff and Respondent, v.
BARBARA HUBBARD, Defendant and Appellant.

COUNSEL

Paul L. Tepper for Defendant and Appellant.

Stockdale, Peckman & Werner and Paul F. Sowa for Plaintiff and Respondent.

OPINION

McCLOSKY, J.—Plaintiff The Ohio Casualty Insurance Company (Ohio) is the insurer of defendant Barbara Hubbard. In this action Ohio seeks a declaration that it no longer has a duty to indemnify or defend Ms. Hubbard with respect to the remaining claims in the action entitled "Angeline Johnson and Estella Smith, on behalf of themselves and the general public under section 17204 of the Business and Professions Code v. Barbara Hubbard and Does 1 through 100. (Sup. Ct. No. C 412430.) After a trial by court sitting without a jury, the court rendered a judgment which in pertinent part provided:

"Plaintiff, OHIO CASUALTY INSURANCE COMPANY, owes no further duty to defendant BARBARA HUBBARD, to indemnify her with respect to the

claims that are asserted, or may be asserted, against her, in case number C 412430;

"Plaintiff, OHIO CASUALTY INSURANCE COMPANY, owes no further duty to defendant BARBARA HUBBARD, to defend her with respect to the claims that are asserted, or may be asserted, against her, in case number C 412430[.]" From this judgment Ms. Hubbard appeals.

## CONTENTIONS

Ms. Hubbard contends that the present appeal is not subject to the final judgment rule[1] and Ohio has a duty to defend appellant against punitive damage allegations contained in the second, third, and fourth causes of action in the underlying lawsuit.

## FACTS

The facts are not in dispute. In the underlying action Ms. Johnson and Ms. Smith filed a complaint for injunctive relief; restitution and damages due to Ms. Hubbard's alleged wrongful conduct in her ownership and operation of residential real properties in which they were tenants.

In the second cause of action of that complaint, Ms. Smith alleged that Ms. Hubbard fraudulently charged her an excessive rate of rent. Ms. Smith prayed for the recovery of that rent which was excessively charged and sought to recover damages for her emotional distress as well as punitive damages.

In the third cause of action Ms. Smith alleged that Ms. Hubbard had attempted to evict her upon fraudulent grounds. Ms. Smith alleged that this caused her lost income and emotional distress for which she sought recovery. She also requested that Ms. Hubbard be held liable for punitive damages.

In the fourth cause of action, Ms. Johnson alleged Ms. Hubbard engaged in essentially the same conduct as that alleged in the third cause of action and prayed for the recovery of identical damages.

At all relevant times, Ohio insured Ms. Hubbard under a liability policy covering property damage and bodily injury caused by an occurrence arising out of the ownership, maintenance or use of the premises which was the subject of the Smith and Johnson action.

---

[1]This contention attempts to solve a problem that never arose and will, therefore, be disregarded.

Ohio defended Ms. Hubbard in the underlying action under a reservation of rights. Thereafter, Ohio entered into a settlement agreement with Ms. Smith and Ms. Johnson which in pertinent part provides:

"The undersigned, ANGELINE JOHNSON and ESTELLA SMITH (hereinafter 'Releasors'), . . . do hereby . . . release . . . BARBARA HUBBARD and the OHIO CASUALTY INSURANCE COMPANY, . . . (hereinafter collectively 'Releasees') of and from any and all claims for emotional distress; mental anguish; damages to Releasors' health, strength and activity; physical and nervous pain and suffering; bodily injury; and the consequences of each of the foregoing; which Releasees now have or which may hereafter accrue, known and unknown, foreseen and unforeseen; which result or arise from the incidents alleged in that certain Los Angeles Superior Court case entitled *Angeline Johnson and Estella Smith v. Barbara Hubbard, et al.* case number C412430.

"Releasors also specifically release, acquit and discharge Releasees from any such claims as hereinabove described with respect to future damage or loss arising from said incidents.

"Releasors expressly agree, represent and covenant that the only claims that they have remaining against Releasees Barbara Hubbard, et al., arising out of the incidents alleged in the hereinabove described Los Angeles Superior Court case, are claims which are solely for monetary or economic loss, and claims for punitive damages. Releasors further represent, . . . that they will pursue only their claims for such monetary or economic loss, and for punitive damages, in said Superior Court action; and, further, that they will at no time amend their complaint to allege any other kinds of damages or claims." (Italics in original.)

Thereafter, Ohio filed this action to determine whether it continued to have either a duty to indemnify or to defend the claims for economic loss and punitive damages in the underlying action.[2]

### DISCUSSION

█ Ms. Hubbard contends that Ohio has a duty to defend the remaining claims for punitive damages.

█ An insurer's duty to defend is separate from its duty to indemnify. (*Aetna Cas. & Surety Co.* v. *Certain Underwriters* (1976) 56 Cal.App.3d

---

[2]Ms. Hubbard's appeal concerns only the remaining claims for punitive damages. We therefore need not, and do not, discuss the impact, if any, of the remaining claims for economic loss.

791, 804 [129 Cal.Rptr. 47].) The fact that an insurer may ultimately not be liable as the indemnifier of the insured does not establish that it has no duty to defend. The duty to defend is broader than the duty to indemnify and is measured by the reasonable expectations of the insured. (*Gray* v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263, 272-275 [54 Cal.Rptr. 104, 419 P.2d 168]; *Miller* v. *Elite Ins. Co.* (1980) 100 Cal.App.3d 739, 753 [161 Cal.Rptr. 322]; *Val's Painting & Drywall, Inc.* v. *Allstate Ins. Co.* (1975) 53 Cal.App.3d 576, 584 [126 Cal.Rptr. 267].) Accordingly, "[a]n insurer is not absolved from its duty to *defend* the lawsuit merely because it is forbidden by law or contract to indemnify the liability-causing action." (*Previews, Inc.* v. *California Union Ins. Co.* (9th Cir. 1981) 640 F.2d 1026, 1028; italics in original.)

■ "An insurer, bound to defend an action against its insured, must defend against all of the claims involved in that action, even though some . . . of them ultimately result in recovery for damages not covered by the policy." (*California Union Ins. Co.* v. *Club Aquarius, Inc.* (1980) 113 Cal.App.3d 243, 248 [169 Cal.Rptr. 685].) The only recognized exception to this rule is if the "insurer produces undeniable evidence of the allocability of specific expenses; . . ." (*Hogan* v. *Midland National Ins. Co.* (1970) 3 Cal.3d 553, 564 [91 Cal.Rptr. 153, 476 P.2d 825].)

■ Ms. Hubbard does not dispute that Ohio has no duty to indemnify against the recovery of punitive damages but urges that this absence does not negate Ohio's duty to continue to defend the underlying action. Ohio urges that "[s]ince there is no potential of coverage under the subject policy for the claims still asserted against [Ms. Hubbard], [it] has no duty to defend her."

The leading case in this state on an insurer's duty to defend is *Gray* v. *Zurich Insurance Co., supra,* 65 Cal.2d 263. In that case, Gray bought from Zurich an insurance policy which provided that it was " '[T]o pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage, and the company shall defend any suit against the insured alleging such bodily injury or property damage and seeking damages which are payable under the terms of this endorsement, even if any of the allegations are groundless, false or fraudulent; but the company may make such investigation and settlement of any claim or suit as it deems expedient.' The policy contains a provision that '[T]his endorsement does not apply' to a series of specified exclusions set forth under separate headings, including a paragraph (c) which reads, 'under coverages L and M, to bodily injury or property damages caused intentionally by or at the direction of the insured.' " (*Id.,* at p. 267.)

One Jones filed a suit against Gray alleging that he "willfully, malicious-ly, brutally and intentionally assaulted him." Gray tendered the defense of that suit to Zurich, which defense Zurich declined because the suit alleged an intentional tort which fell outside of the coverage of the policy. There-after, Gray sued Zurich alleging that it had breached its duty to defend.

The Supreme Court initially examined the Zurich policy applying the principles that doubt as to the meaning of a policy must be resolved against the insurer and that any exception to a basic underlying obligation of the insurer must be clear and conspicuous. The court concluded that viewed in such a light the broadly stated promise to defend was not clearly conditioned on the underlying action involving a nonintentionally inflicted injury. Ac-cordingly, in its primary holding, the court ruled that the injury involved was of such a nature and kind that the insured could reasonably expect to be covered by the policy. Therefore, the insurer bore an obligation to defend that suit regardless of the fact that it was premised upon an intentional tort for which the insurer could not indemnify. (See also *Lowell* v. *Maryland Casualty Co.* (1966) 65 Cal.2d 298, 300-301 [54 Cal.Rptr. 116, 419 P.2d 180].)

The court reasoned further that an insurer's defense of an action for an intentional tort was not violative of the proscription against the indemnifi-cation of a wilful act because the defense of the suit would not encourage wilful tortious conduct. (Ins. Code, § 533; Civ. Code, § 1668.)[3]

The *Gray* court concluded alternatively that the insurer had a duty to defend because the facts the insurer learned from the underlying complaint, as well as other sources, gave rise to a potential for coverage under the policy.

In the case at bench, the subject policy provides that "[Ohio] will pay on behalf of the insured all sums which the insured shall become legally obli-gated to pay as damages because of [¶] Coverage A. bodily injury or [¶] Coverage B. property damage [¶] to which this insurance applies, caused by an occurrence and arising out of the ownership, maintenance or use of the insured premises and all operations necessary or incidental thereto, and [Ohio] shall have the right and duty to defend any suit against the insured

---

[3]That proscription is contained in Insurance Code section 533 and Civil Code section 1668, which provide: "An insurer is not liable for a loss caused by the wilful act of the insured; but he is not exonerated by the negligence of the insured, or of the insured's agents or others." (Ins. Code, § 533.) "All contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law." (Civ. Code, § 1668.)

seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but [Ohio] shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of [Ohio's] liability has been exhausted by payment of judgments or settlements."

The only limitation the policy places on the duty to defend is when the insurer's liability limit has been exhausted by a judgment or a settlement. (See 7c Appleman, Insurance Law and Practice (1979) Duties of Insurer, § 4682, pp. 34-37; Annot., Liability Insurer—Duty to Defend (1969) 27 A.L.R.3d 1057.) The policy contains no express limitation for the defense of claims for which punitive damages are sought.

Ohio urges, however, that because an exclusion for punitive damages is implied in every California insurance policy, an insured cannot successfully argue that the absence of an express exclusion entitled her to a defense, when all that remains is a claim for punitive damages. In support of this assertion, Ohio relies on *Evans* v. *Pacific Indemnity Co.* (1975) 49 Cal.App.3d 537 [122 Cal.Rptr. 680].

In *Evans,* the court determined that it was not necessary for an insurance policy to contain an express exclusion for the indemnification of wilful acts because such an exclusion is implied into the policy by Insurance Code section 533. Contrary to Ohio's characterization, however, the *Evans* court was concerned only with the duty to indemnify and not with the duty to defend. As the *Gray* court explained, the statutory exclusion for the indemnification of wilful acts does not automatically relieve the insurer of its duty to defend a suit premised on wilful acts.

■ "There are two distinct reasons why indemnification of punitive damages is prohibited in California. First is the public policy rationale against diluting the deterrent effect of punitive damages by allowing the impact of the penalty to be shifted to the insurer. This justification applies whatever the basis for the punitive damages award. The second reason is applicable only when the basis for the punitive damages is a wilful act of the defendant. When the defendant commits an intentional tort, the prohibition of [Ins. Code] section 533 presents an additional reason for disallowing indemnification of the punitive damages, as well as indemnification of the remainder of the plaintiff's recovery. . . ." (*Peterson* v. *Superior Court* (1982) 31 Cal.3d 147, 158 [181 Cal.Rptr. 784, 642 P.2d 1305].)

Neither of these reasons would be weakened by the insurer's defense of an action in which punitive damages are sought. We, therefore, conclude

that the public policy exclusion for the indemnification of punitive damages does not conclusively establish that an insurer has no duty to defend a suit in which the only remaining claim is for punitive damages.

■ Ohio refers to numerous cases for the proposition that the absence of the insurer's potential liability from a suit eliminates any duty to defend that suit. While many of the cases cited do make this blanket statement, this standard cannot be employed to defeat the reasonable expectations of the insured.

The cases referred to involved either an interpretation of the insuring clause of the policy, i.e., does the underlying suit involve a claim the nature of which is covered by the policy, or the interpretation and application of an exclusionary clause. (See *Giddings* v. *Industrial Indemnity Co.* (1980) 112 Cal.App.3d 213, 218 [169 Cal.Rptr. 278]; *Silva & Hill Constr. Co.* v. *Employers Mut. Liab. Ins. Co.* (1971) 19 Cal.App.3d 914, 926-927 [97 Cal.Rptr. 498]; *Fresno Economy Import Used Cars, Inc.* v. *United States Fid. & Guar. Co.* (1977) 76 Cal.App.3d 272, 278-281 [142 Cal.Rptr. 681].) In that setting, the determination of whether there is a potential liability depends upon the reasonable expectations of the insured.

An insured is not covered for acts or omissions for which it is potentially liable if the underlying suit involves only acts the nature of which are clearly not covered by the policy or acts which are clearly excluded from coverage. The resolution of these inquiries is dependent upon the reasonable expectations of the insured; e.g., is the exclusionary clause upon which the insurer relies to deny coverage conspicuous and clear? Could the insured reasonably expect the policy to cover the types of acts involved in the underlying suit?

The situation presented in the case at bench is, however, of a different nature. When an exclusion for indemnification of punitive damages is implied into a policy for public policy reasons, the insurer cannot be potentially liable for the excluded damages regardless of the otherwise reasonable expectations of the insured. Accordingly, if Ohio is correct and the insurer has a duty to defend only when it is potentially liable, it need not defend in such a circumstance. The court in *Gray,* however, recognized that insurers have a broader duty to defend. We, therefore, hold that if the reasonable expectations of an insured are that a defense will be provided for a claim, then the insurer cannot escape that obligation merely because public policy precludes it from indemnifying that claim.

■ Generally, absent an express statement in the policy, the average insured will not know that she is not insured for an award of punitive dam-

ages. (*Northwestern National Casualty Company* v. *McNulty* (5th Cir. 1962) 307 F.2d 432, 443.) This is evidenced by the sharp division among the states on the question of whether punitive damages can be the subject of indemnification. (See Annot., Insurance Coverage-Punitive Damages (1982) 16 A.L.R.4th 11; Note: *Insurance for Punitive Damages: A Reevaluation* (1976) 28 Hastings L.J. 431.)

In the case at bench, Ohio admits that the claims for general damages which it settled, gave rise to a duty on its part to defend. This admission establishes that the underlying suit involved matters, the kind and nature, of which were covered by the policy. Punitive damages cannot be recovered in a vacuum. (See *O'Neil* v. *Spillane* (1975) 45 Cal.App.3d 147, 161 [119 Cal.Rptr. 245].) They are "merely ancillary to the claims for compensatory damages." (*Salus Corp.* v. *Continental Cas. Co.* (D.C. App. 1984) 478 A.2d 1067, 1070, citing *Lerner* v. *General Ins. Co. of America* (1978) 219 Va. 101 [245 S.E.2d 249, 252].) Accordingly, absent a clear and conspicuous exclusion in the policy to the contrary, it was reasonable for Ms. Hubbard to expect that Ohio's duty to defend the claim for general damages gave rise to its duty to defend the claim for punitive damages which was ancillary thereto.

That portion of the judgment providing that Ohio has no further duty to defend Ms. Hubbard in the underlying action is reversed. The remainder of the judgment is affirmed.

Woods, P. J., and Kingsley, J., concurred.

A petition for a rehearing was denied January 4, 1985, and respondent's petition for a hearing by the Supreme Court was denied February 21, 1985. Mosk, J., Kaus, J., and Lucas, J., were of the opinion that the petition should be granted.