June 30, 1997

1-96-0446

SOCIETY OF MOUNT CARMEL, ) APPEAL FROM

CARMELITE FATHERS, FATHERS OF ) THE CIRCUIT COURT

THE ORDER OF MOUNT CARMEL, INC., ) COOK COUNTY.

CARMELITE FATHER JOHN )

KNOERNSCHILD, O. CARM., )

CARMELITE FATHER JOE ATCHER, )

O.CARM., AND LARRY GABRIEL, )

)

Plaintiffs-Appellees, ) 

)

)

v. ) No. 89 CH 03629

                              )            

NATIONAL BEN FRANKLIN             ) 

INSURANCE COMPANY OF ILLINOIS,    ) 

and THE CONTINENTAL INSURANCE COMPANY, ) 

) THE HONORABLE,

Defendants-Appellants. ) LESTER FOREMAN,

) JUDGE PRESIDING.

 

PRESIDING JUSTICE COUSINS delivered the opinion of the court:

Plaintiffs, Society of Mount Carmel, Carmelite Fathers, Fathers of the Order of Mount Carmel, Inc., Carmelite Father John Knoernschild, Carmelite Father Joe Atcher, and Larry Gabriel, filed this declaratory action seeking coverage from defendant insurers under a workers' compensation and employers' liability policy for claims brought by Larry Gabriel from an alleged wrongful termination from his teaching position at a California high school.  Defendants, National Ben Franklin Insurance Company of Illinois (National Ben Franklin) and the Continental Insurance Company (Continental), appeal from an order granting summary judgment in favor of all plaintiffs except Larry Gabriel in which the trial court found that the insurers had waived or were estopped from asserting coverage defenses and from an order in which the trial court awarded plaintiffs $5,224,254.72, consisting of the judgment awarded to Gabriel in California. 

On appeal, defendants contend that: (1) the trial court erred in holding, as a matter of law, that the plaintiffs who were named as defendants in the underlying action were "insureds" under the workers' compensation and employers' liability policy; (2) even assuming that the plaintiffs were insureds, the trial court erred in holding that the defendant insurers owed a duty to defend the underlying action under the workers̓ compensation and employers̓ liability policy; (3) even assuming the plaintiffs were insureds, the trial court erred in holding, as a matter of law, that defendant insurers waived their right to deny coverage and were estopped from denying coverage under the workers̓ compensation and employers̓ liability policy; and (4) the trial court erred in finding coverage where the underlying judgment was based on the willful acts of plaintiffs and includes an award of punitive damages otherwise not insurable.

BACKGROUND

On October 3, 1985, Larry Gabriel, a teacher at Crespi High School in California, filed a five-count complaint in the superior court of the State of California for the County of Los Angeles for wrongful termination against Fathers of the Order of Mount Carmel, Inc., Crespi High School, Carmelite Father John Knoernschild, and Carmelite Father Joe Atcher.  The Fathers of the Order of Mount Carmel is domiciled in Illinois; the remaining defendants are domiciled in California.  Count I alleged breach of contract; count II alleged breach of the covenant of good faith and fair dealing; count III alleged intentional infliction of emotional distress; count IV alleged negligent infliction of emotional distress; and count V alleged fraud.

After receiving the Gabriel complaint, the defense of the action was tendered to the defendant insurers pursuant to three policies issued by the insurers to plaintiffs. These policies were: (1) the comprehensive business policy, No. CBP 418775 (the CGL policy); (2) the umbrella liability policy, No. LX 2104669 (the umbrella policy); and (3) the workers̓ compensation and employers̓ liability policy, No. WC 3048779 (the workers̓ compensation and employers̓ liability policy).  On May 21, 1986, an agent from Continental sent a response in which he explained that the Gabriel suit was not covered under Continental's CGL policy.  The agent explained why the action was not covered and stated in pertinent part:

"Liability policies, as in Continental's, contain employee exclusions because such coverage is normally provided through separately procured employer's liability insurance.  Continental protects against liability to third parties, such as invitees, visitors or consumers who are not employees of the society of Mount Carmel; coverage for employee related injuries and claims is available through the Society's Workers Compensation [
sic
] carrier, which ordinarily protects not only against employee's compensation claims, but against their tort actions as well.  (In this particular instance, Continental also writes the workers' compensation policy, policy number WC 3048779.  And, as this appears to fall within the parameters of their coverage, we are advising the worker's [
sic
] compensation division of this loss and are requesting they respond directly to you.)

On October 3, 1986, plaintiffs' attorney wrote to Continental because he had not received a response from the workers' compensation division. Counsel also informed Continental of the status of the Gabriel litigation in that depositions had been taken and scheduled.  

On October 3, 1986, Continental's workers' compensation division sent plaintiffs' counsel a handwritten memo asking him to forward all pertinent information that would "help get the ball rolling."  Relevant documents were then sent to Continental on October 20, 1986.

Having received no response from Continental, plaintiffs' counsel again wrote to the insurer on November 17, 1986, and December 8, 1986.  Correspondence exchanged between the parties between December 8, 1986, and April 14, 1988, addressed the CGL and umbrella liability policies issued by defendants.

Meanwhile, in the underlying action, a judgment was reached in favor of Gabriel consisting of $198,311.52 for loss of earnings, $2,672,200 in compensatory damages and $700,000 in punitive damages, for a total of $3,570,511.52.

On May 3, 1989, plaintiffs filed suit in Illinois against defendants for a declaration of rights under the three policies of liability insurance issued by defendants.   Plaintiffs sought a defense in connection with Gabriel̓s wrongful termination action as well as attorney fees and costs for the defendants' alleged bad-faith refusal to defend the claims and allegations in the Gabriel complaint.  

On September 15, 1989, defendants moved to dismiss the declaratory complaint pursuant to section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 1992)) based on plaintiffs' failure to join Larry Gabriel as a necessary party and Crespi High School̓s lack of standing to sue for the reason that it was not a legal entity.  On November 6, 1989, the trial court denied defendants̓ motion to dismiss for failure to join a necessary party but granted their motion with respect to Crespi High School, striking it as a party to this action.  

Plaintiffs moved for summary judgment on January 22, 1990, asking the trial court to find in its favor that the defendants had a duty to defend the underlying Gabriel action. The trial court granted plaintiffs̓ motion after finding that defendants owed such a duty and after finding that the Gabriel complaint̓s allegation of negligent infliction of emotional distress sounded in tort and was potentially within the coverage of the CGL policy.  By two later orders, the trial court awarded plaintiffs attorney fees incurred in the defense of the Gabriel action for $56,647.85 and $51,065.63, respectively. 

Plaintiffs filed a motion to add Gabriel as a necessary party on April 23, 1991.  Thereafter, plaintiffs also filed a motion for leave to file a second amended complaint naming Gabriel as an additional plaintiff and alleging that defendants were estopped from raising coverage defenses.  On May 23, 1991, the trial court denied plaintiffs̓ motion for leave to file the complaint and on July 2, 1991, denied plaintiffs̓ motion to reconsider.  

Both parties thereafter appealed to this court.  On appeal, plaintiffs sought a declaration of their rights as insureds and defendants̓ liabilities as insurers.  Plaintiffs argued that the trial court erred in denying their request for fees incurred in the filing of the action and in denying their motion to file an amended complaint.  Defendants challenged the trial court̓s order granting plaintiffs̓ motion for summary judgment on the duty-to- defend issue and the trial court̓s award of attorney fees to plaintiffs.

In 
Society of Mount Carmel v. National Ben Franklin Insurance Co.
, 268 Ill. App. 3d 655, 643 N.E.2d 1280 (1994),  we held that the failure of plaintiffs to join Larry Gabriel as a necessary party in the declaratory action was reversible error and that, under California law, the defendants owed no liability coverage under the CGL policy because the wrongful termination policy of Larry Gabriel was not an "occurrence" or "accident" as required by the policy.  Relying on 
Wong v. State Compensation Insurance Fund
, 12 Cal. App. 4th 686, 16 Cal. Rptr.2d 1 (1993), we also held that Gabriel̓s complaint for wrongful termination presented a potential liability under the workers̓ compensation and employers̓ liability policy and that the defendants had a duty to defend the plaintiffs upon a finding that the plaintiffs, who were named as defendants in Gabriel̓s complaint, were insureds under the workers̓ compensation and employers' liability policy.  We then remanded the case to the trial court to grant plaintiffs leave to amend to add Gabriel as a necessary party, to allege with specificity coverage under the workers̓ compensation and employers̓ liability policy and to allege their estoppel argument.

On remand, plaintiffs were given leave to file a two-count second amended complaint that included Larry Gabriel as a party plaintiff.  In count I, plaintiffs sought coverage under the workers̓ compensation and employers̓ liability policy for a judgment in the amount of $3,620.982.40 for the judgment entered against only Fathers of the Order of Mount Carmel, Inc., and Carmelite Father John Knoernschild.  Defendants filed an answer denying all allegations of coverage and wrongful conduct.  In addition, defendants counterclaimed for a declaration that they owed no coverage.  

On June 20, 1995, plaintiffs filed a motion for summary judgment arguing, 
inter
 
alia
, that defendants had waived the right to assert policy defenses under the workers̓ compensation and employers̓ liability policy.  Defendants filed a cross-motion for summary judgment.  In response to defendants̓ cross-motion, plaintiffs conceded that defendants were entitled to summary judgment on count II of the second amended complaint with respect to the CGL and umbrella policies.

On  November 6, 1995, the trial court granted summary judgment in favor of defendants on count II of the second amended complaint and in favor of plaintiffs on count I.  The court held that plaintiffs were entitled to reasonably believe that defendants were going to undertake coverage and intended to waive any defenses and that the insured was induced to rely on the insurers̓ apparent position that they intended to waive defenses.  On December 27, 1995, the trial court subsequently granted plaintiffs̓ petition for further relief in the form of a money judgment and entered judgment in favor of all plaintiffs, except Larry Gabriel, for $5,224,254.72.  It is from the orders of  November 6, 1995 and December 27, 1995, that defendants appeal.

We affirm.

ANALYSIS

I

Defendants first contend that the trial court erred in holding, as a matter of law, that the plaintiffs, who were named as insureds in the underlying action, were insureds under the workers̓ compensation and employers̓ liability policy.   Defendants argue that if the plaintiffs are not "insureds," there is no duty to defend that can be breached, nor can defendants waive their right to deny or be estopped from denying coverage.  

It is a basic principle of insurance contract interpretation that doubts, uncertainties and ambiguities arising out of policy language ordinarily should be resolved in favor of the insured in order to protect the insured's reasonable expectation of coverage.  
Producers Dairy Delivery Co. v. Sentry Insurance Co.
, 41 Cal. 3d 903, 912, 718 P.2d 920, 924, 226 Cal. Rptr. 558, 562. (1986).  It is also well established that this rule of construction is applicable only when the policy language is found to be unclear.  
Producers Dairy
, 41 Cal. 3d at 912, 718 P.2d at 924-25, 226 Cal. Rptr. at 562.   "A policy provision is ambiguous when it is capable of two or more constructions, both of which are reasonable."  
Producers Dairy
, 41 Cal. 3d at 912, 718 P.2d at 924-25, 226 Cal. Rptr. at 562, citing 
Delgado v. Heritage Life Insurance Co.
, 157 Cal. App. 3d 262, 271, 203 Cal. Rptr. 672, 677 (1984).  Whether language in a contract is ambiguous is a question of law, which this court is to review 
de novo
. 
Producers Dairy
, 41 Cal. 3d at 912, 718 P.2d at 925, 226 Cal. Rptr. at 562.  However, a finding of ambiguity in policy language cannot be based on an unreasonable misunderstanding on the part of the insured. 
Producers Dairy
, 41 Cal. 3d at 913, 718 P.2d at 925, 226 Cal. Rptr. at 562.  

In the instant case, the trial court found that plaintiffs were insured under the disputed policy.  The trial court stated:

"I don't think there's any question as to who the insurer was insuring.  If, in fact, there's an ambiguity here, I think that ambiguity must be resolved in favor of the insured."

We find no error in the trial court's analysis.  

The workers̓ compensation and employers̓ liability policy consists of general coverage provisions followed by several pages of attachments.  The attachments are the “schedules” and “endorsements.”  General sections A and B of the policy provide in pertinent part:

"A. The Policy

This policy *** is a contract of insurance between you (the employer named in item 1 of the Information Page) and us (the insurer named on the Information Page).  The only agreements relating to this insurance are stated in this policy. 

B. Who is insured.

You are insured if you are an employer named in item 1 of the Information Page.  If that employer is a partnership, and if you are one of its partners, you are insured, but only in your capacity as an employer of the partnership̓s employees."

Item 1 of the information page designates the name of the insured as “Society of Mt. Carmel and/or Carmelite Fathers 45 East Dundee Road Barrington, Illinois 60010."   Across from and to the right of item 1 are four boxes labeled “individual,” “partnership,” “corporation,” and “other.”  The “other” box is checked and “Religious Order” is typed in the space provided.  Below the checked boxes and to the right of the name of the insured is a designation for "Other Workplaces not shown above."  The phrase "See Schedules [
sic
] A Attached" is typed into the space provided.  Schedule A lists several workplaces under the heading "State of California."  Crespi High School is one of the workplaces listed. "Church: Clergy, Professional Assistants, etc.," and "College: All other employees" are listed under Crespi High School.  Each workplace is rated separately and an estimated annual premium is provided for each.  

Despite the numerous workplaces listed on schedule A, defendants contend that their duty to defend extended only to the Society of Mt. Carmel and/or Carmelite Fathers as it was the only employer named in item 1 of the information page.  Furthermore, despite the premium calculation for each workplace on schedule A, defendants argue that there is nothing to indicate that these locations, employees or clergy were to be treated as insured employers who were to receive workers̓ compensation or employers̓ liability coverage for claims brought by their employees. 

Plaintiffs contend that, under any reasonable interpretation of the policy, there was coverage for Crespi High School and the person and entities that operated it, particularly since defendants proceeded to calculated the premium amounts based upon the workplaces described in the policy. We agree.

We believe the policy is not ambiguous and, when read as a whole, clearly insures the plaintiffs.  Even if the policy could be viewed as ambiguous, California law requires that ambiguous language be resolved in favor of the insured.  
Producers Dairy Delivery
, 41 Cal. 3d at 912, 718 P.2d at 924, 226 Cal. Rptr. at 562.  The application of this rule operates to construe ambiguous language against the party who caused the uncertainty to exist and protects the objectively reasonable expectations of the insured.  In the instant case, it was reasonable for plaintiffs to believe they were insured.  There is no indication on the face of the policy that the listing of Crespi High School, as well as the other Mount Carmel localities in California, is for any reason other than as a workplace that is insured under the policy. Accordingly, defendants cannot now claim that plaintiffs are not insureds under the policy.

II

Defendants next contend that, even assuming the plaintiffs were insureds under the policy, the trial court erred in holding that defendants owed a duty to defend the underlying action.  Specifically, defendants argue that: (a) the policy pays only benefits required under the workers̓ compensation law and not damages awarded in a civil suit; (b) the underlying complaint does not allege an "accident"; and (c) exclusions in the employers̓ liability portion of the policy and section 533 of the California Insurance Code (Cal. Ins. Code § 533) precluded coverage.  Plaintiffs respond that defendants have waived any right to deny coverage and are estopped from arguing non coverage.  We will first address the issues of waiver and estoppel relative to this case as they are dispositive.

Waiver is an affirmative defense for which the insured bears the burden of proof. 
Waller v. Truck Insurance Exchange Inc.
, 11 Cal. 4th 1, 33, 900 P.2d 619, 637, 44 Cal. Rptr. 2d 370, 388 (1995).   California courts will find waiver in insurance cases when an insurer intentionally relinquishes a right or when that insurer's acts are so inconsistent with an intent to enforce the right as to induce a reasonable belief in the insured that such right has been relinquished (
Waller
, 11 Cal. 4th at 33,
 900 P.2d at 637, 44 Cal. Rptr. at 388) and where the insured detrimentally relied upon such conduct.  
Michaelian v. State Compensation Insurance Fund
, 50 Cal. App. 4th 1093, 1109, 58 Cal. Rptr. 2d 133, 142 (1996).  

Plaintiffs contend that defendants waived their right to assert coverage defenses by affirming coverage in the letter dated May 26, 1986, and by their failure to tell the plaintiffs that the workers' compensation and employers' liability policy did not provide coverage. Plaintiffs also assert that defendants are estopped from raising coverage defenses because of their misconduct under California law and because of plaintiffs' prejudice and detrimental reliance.  We agree.

Defendants cite 
Waller v. Truck Insurance Exchange, Inc.
, 11 Cal. 4th 1, 900 P.2d 619, 44 Cal. Rptr. 2d 370, to support their position that their failure to set forth in pre-suit correspondence the specific coverage defenses applicable to the workers' compensation and employers' liability policy did not provide a basis for finding that they intended to waive these defenses. In 
Waller
, the plaintiffs argued that the insurer's conduct over seven years in failing to raise certain coverage defenses in its denial letter evidenced an objective intent not to raise other coverage issues.  The California Supreme Court rejected the rule that an insurer automatically waives coverage defenses by failing to mention them when 
denying a claim
.  11 Cal. 4th at 33, 900 P.2d at 637, 44 Cal. Rptr. at 388.

In the instant case, however, review of the record indicates that defendants neither expressly denied nor expressly affirmed coverage under the policy. In their May 21, 1986, letter to plaintiffs' attorney, Continental's agent wrote, "And as this [Gabriel's complaint] appears to fall within the parameters of their coverage, we are advising the workers' compensation division *** and are requesting they respond directly to you."  Since plaintiffs received no notice that defendants would not defend the Gabriel suit, we believe it was reasonable for the plaintiffs to interpret the letter, particularly the language above, as an indication of defendants' intent to defend the underlying suit.  Therefore, it is our view that defendants waived their right to assert coverage defenses as their conduct reasonably induced plaintiffs, to their detriment, to believe that the defendants would defend the underlying action.   See 
Tomerlin v. Canadian Indemnity Co.
, 61 Cal. 2d 602, 394 P.2d 571, 39 Cal. Rptr. 731 (1964). 

Furthermore, we believe defendants are also estopped from asserting coverage defenses.  In 
Society of Mount Carmel v. National Ben Franklin Insurance Co.
, 268 Ill. App. 3d 655, 643 N.E.2d 1280 (1994), we noted that, under California law, when an insurer wrongfully refuses to defend, it is estopped from denying liability under the policy at a later date.  268 Ill. App. 3d at 673, citing 
Gray v. Zurich Insurance Co.
, 65 Cal. 2d 263, 279, 419 P.2d 168, 178, 54 Cal. Rptr. 104, 114 (1966).  We stated in pertinent part:

"With respect to plaintiffs' estoppel claim, we note that under California law *** a duty to defend will arise where the underlying complaint filed against the insured alleges facts which are within, or potentially within, the coverage of the policy.  While an insurer has a duty to defend, it may not have a duty to indemnify. [Citations.]  

Furthermore, while the insurer must defend the underlying action, it will not be estopped at a later date from claiming non coverage under the indemnity provisions of the policy if it has reserved its right to do so by securing a nonwaiver agreement from the insured or making a reservation of rights disclaiming liability to the insured.  [Citations.]  If the insurer adequately reserves its right to assert the non coverage defense later, it will not be bound by the judgment entered against the insured in the underlying action. [Citation.]  However, when the insurer wrongfully refuses to defend, it is estopped from denying liability under the policy at a later date. [Citations.]

In the instant case, the defendant insurers did not seek a judicial determination regarding their obligation to defend the underlying California action and did not defend that action under a reservation of rights.  Defendants refused to defend the lawsuit and thus would be estopped from raising non coverage as a defense under the indemnity provisions of the policy should the court on remand find that the defendants owed a duty to defend the plaintiffs who were California defendants in the underlying action. [Citations.]" 268 Ill. App. 3d at 672-673.

Pursuant to our instructions on remand, the trial court determined whether the defendants owed a duty to defend the Gabriel suit and found in the affirmative. 

An insurer's duty to defend is separate from its duty to indemnify. 
Ohio Casualty Insurance Co. v. Hubbard
, 162 Cal. App.  3d 939, 943, 208 Cal. Rptr. 806, 808 (1984). The fact that an insurer may ultimately not be liable as the indemnifier of the insured does not establish that it has no duty to defend, because the duty to defend is broader than the duty to indemnify and is measured by the reasonable expectations of the insured. 
Ohio Casualty
, 162 Cal. App. 3d at 944, 208 Cal. Rptr. at 809; 
Gray v. Zurich Insurance
, 65 Cal. 2d at 272-75, 419 P.2d at 172-74, 54 Cal. Rptr. at 111-14. 

In determining whether there is a duty to defend, courts examine not only the pleadings, but also the potential liability created by the suit.  
Waller
, 11 Cal. 4th at 19, 900 P.2d at 624, 44 Cal. Rptr. at 378.  In 
Gray v.
 Zurich Insurance
, 65 Cal. 2d 263, 419 P.2d 168, 54 Cal. Rptr. 104, the insured had been sued for allegedly having "wilfully, maliciously, brutally and intentionally assaulted" the plaintiff.  The California Supreme Court held that such conduct, could have fallen within the insurance policy's indemnification coverage as the plaintiff could have amended his complaint to allege merely negligent conduct, which would have brought the conduct within that liability.  This possibility created a duty to defend.  Accordingly, under 
Gray
, an insurer is not absolved from its duty to defend a lawsuit merely because it is forbidden by law or contract to indemnify the liability-causing action. See also 
Ohio Casualty
, 162 Cal. App. 3d at 944, 208 Cal. Rptr. at 809.

The defendants in the instant case had a duty to defend the Gabriel claim because the facts in the underlying complaint gave rise to a 
potential
 for coverage under the policy. When Gabriel's complaint was first tendered, an employee was permitted, under California law, to sue an employer for negligent infliction of emotional distress resulting from wrongful termination of employment.
(footnote: 1)[fn1]  Gabriel's complaint included a count based on negligent infliction of emotional distress and, therefore, was potentially within the terms of the policy. 

Accordingly, since defendants wrongfully refused to defend, the trial court was correct in determining that they are therefore estopped from asserting coverage defenses and summary judgment in favor of plaintiffs was proper. 

III

Defendants also contend that section 533 of the Insurance Code precludes coverage. We disagree.  Section 533 of the Insurance Code states that an insurer is not liable for the "willful act of the insured" and is an implied exclusionary clause in all policies. (Cal. Ins. Code § 533); 
Moore v. Continental Insurance
, 51 Cal. Rptr. 2d 176, 178 (1996).  California courts have interpreted the provision to preclude coverage for acts such as child molestation, which are deemed to be inherently intentional, wrongful and harmful.  See 
J.C. Penney Casualty Insurance Co. v. M.K.
, 52 Cal. 3d 1009, 1019, 1025, 804 P.2d 689, 695, 700, 278 Cal. Rptr. 64, 68, 73 (1991); 
Coit Drapery Cleaners, Inc. v. Sequoia Insurance Co.
, 14 Cal. App. 4th 1595, 1603-04, 18 Cal. Rptr. 2d 692, 698 (1993)(section 533 precludes coverage for sexual harassment claims). Section 533 does not, however, bar coverage for conduct that may be wrongful but is not intentional or willful from the standpoint of the insured.  
Melugin v. Zurich Canada
, 50 Cal. App. 4th 658, 665, 57 Cal. Rptr. 2d 781, 787 (1996).  

In the instant case, not all of the allegations in the Gabriel complaint involve allegations of willful or intentional conduct that would be barred under section 533.  For example, the fundamental bases of the allegations in counts I and II of Gabriel's complaint are breach of contract and breach of the covenant of good faith and fair dealing based on wrongful termination.  The conduct alleged in these counts may be wrongful but does not necessarily involve willful and intentional conduct of the sort that has been previously precluded under section 533. Thus, section 533 is inapplicable here and defendants were obligated to provide a defense. 

IV

Defendants also argue that the trial court erred in finding coverage where the underlying judgment was based on the willful acts of plaintiffs and includes an award of punitive damages not otherwise insurable. We disagree.

Generally, an insurer is not liable for any portion of a judgment that awards punitive damages. 
Stevens v. Owens-Corning Fiberglas Corp.
, 49 Cal. App. 4th 1645, 1664, 57 Cal. Rptr. 2d 525, 541 (1996); 
Stonewall Surplus Lines Insurance Co. v. Johnson Controls, Inc.
, 14 Cal. App. 4th 637, 17 Cal. Rptr. 2d 713 (1993); 
City Products Corp. v. Globe Indemnity Co.
, 88 Cal. App. 3d 31, 42, 151 Cal. Rptr. 494, 500 (1979). Thus, indemnification of punitive damages is prohibited in California.  
Ohio Casualty
, 162 Cal. App. 3d at 946, 208 Cal. Rptr. at 810-11.  The purpose of this policy is to prevent the dilution of the deterrent effect of punitive damages by allowing the impact of a penalty to be shifted to an insurer. 
Ohio Casualty
, 162 Cal. App. 3d at 946, 208 Cal. Rptr. at 810.  But this policy is not weakened by the 
defense
 of an action in which punitive damages are sought.  
Ohio Casualty
, 162 Cal. App. 3d at 947, 208 Cal. Rptr. at 811. 

In the instant case, defendants are estopped from asserting coverage defenses because of their conduct (
i.e.
, their failure to inform the plaintiffs that they would not defend the Gabriel claim) subsequent to their issuance of the insurance contract. See generally 
Tomerlin v. Canadian Indemnity Co.
, 61 Cal. 2d 638, 394 P.2d 571, 39 Cal. Rptr. 731, (1964)(recovery under a subsequent estoppel does not offend public policy). 
Accordingly, none of the reasons for the prohibition of the indemnification of punitive damages are contravened by our decision here that defendants wrongfully refused to defend plaintiffs in the Gabriel suit.  See 
Ohio Casualty Insurance Co. v. Hubbard
, 162 Cal. App. 3d at 947, 208 Cal. Rptr. at 811 ("If the reasonable expectations of an insured are that a defense will be provided for a claim, then the insurer cannot escape that obligation merely because public policy precludes it from indemnifying that claim").

For the foregoing reasons, we affirm the judgments of the lower court.

Affirmed.

GORDON and CAHILL, JJ., concur.

[fn1]Our previous ruling that Gabriel's complaint presented a potential for coverage under the workers' compensation and employers' liability policy was based on the decision in 
Wong v. State Compensation Insurance Fund
, 12 Cal. App. 4th 686, 16 Cal. Rptr. 2d 1 (1993), in which the California Appellate Court held that an insurer owed a duty to defend a wrongful termination suit that included allegations of intentional and negligent infliction of emotional distress.  Since our previous ruling, however, 
Wong
 has been overruled by the California Supreme Court's decision in 
LaJolla Beach & Tennis Club, Inc. v. Industrial Indemnity Co.
, 9 Cal. 4th 27, 46, 884 P.2d 1048, 1057, 36 Cal. Rptr. 2d 100, 111 (1995).  
LaJolla
, however does not affect our ruling because defendants' duty to defend arose at the time Gabriel's complaint was presented (see 
Gray
, 65 Cal. 2d 263, 419 P.2d 168, 54 Cal. Rptr. 104); at that time, 
Wong
 was in effect.

FOOTNOTES
1:
Our previous ruling that Gabriel's complaint presented a potential for coverage under the workers' compensation and employers' liability policy was based on the decision in 
Wong v. State Compensation Insurance Fund
, 12 Cal. App. 4th 686, 16 Cal. Rptr. 2d 1 (1993), in which the California Appellate Court held that an insurer owed a duty to defend a wrongful termination suit that included allegations of intentional and negligent infliction of emotional distress.  Since our previous ruling, however, 
Wong
 has been overruled by the California Supreme Court's decision in 
LaJolla Beach & Tennis Club, Inc. v. Industrial Indemnity Co.
, 9 Cal. 4th 27, 46, 884 P.2d 1048, 1057, 36 Cal. Rptr. 2d 100, 111 (1995).  
LaJolla
, however does not affect our ruling because defendants' duty to defend arose at the time Gabriel's complaint was presented (see 
Gray
, 65 Cal. 2d 263, 419 P.2d 168, 54 Cal. Rptr. 104); at that time, 
Wong
 was in effect.